## Wheeler v. Insurance Company.

1. Where by his covenant or otherwise a mortgagor is bound to insure the mortgaged premises for the better security of the mortgagees, the latter have, to the extent of their interest in the property destroyed, an equitable lien upon the money due on a policy taken out by him.
2. This equity exists, although the covenant provides that in case of the mortgagor's failure to procure the insurance and assign the policy, the mortgagees may procure it at his expense.
3. This equitable doctrine obtains in Louisiana.

Appeal from the Circuit Court of the United States for the District of Louisiana.

The facts are stated in the opinion of the court.

*Mr. E. T. Merrick* and *Mr. G. W. Race* for the appellants.
*Mr. Thomas Hunton, contra.*

Mr. Justice Bradley delivered the opinion of the court.

Johnson & Goodrich, commission merchants of New Orleans, being creditors of John H. Green, a planter, for advances made, suggested to him that he should authorize them to effect insurance on his buildings, gin-house, machinery and cotton in the gin-house, for their better security. He accordingly wrote them a letter authorizing them to effect such insurance; and they procured from The Factors and Traders' Insurance Company of New Orleans insurance on an open policy in their own names for $5,500 on the buildings and machinery, and $2,000 on the cotton. This was in November, 1872, and the insurance was for sixty days. In January, 1873, this insurance was renewed for sixty days longer; and before its expiration, in March, 1873, the buildings, machinery, and a small quantity of cotton were destroyed by fire. Johnson & Goodrich took measures to recover the insurance, and received $900 for the loss on the cotton, leaving a balance still due to Green of $3,450, for the payment of which, Green having become insolvent, they relied on the insurance upon the buildings and machinery, and presented to the insurance company the necessary proofs to collect the same.

At this point the appellants, Ezra Wheeler & Co., interposed, and set up a claim to have the insurance money on the

buildings and machinery paid to them, and for this purpose filed their bill against the insurance company, Green, and Johnson & Goodrich. The defendants severally answered, proofs were taken, and upon due hearing the court below made a decree dismissing the bill of complaint. From that decree the present appeal was taken.

The case as developed by the pleadings and the evidence appears to be substantially as follows: Prior to the employment of Johnson & Goodrich by Green as his commission merchants, he had employed the firm of Foster & Gwyn, of New Orleans, in the same capacity, and had become largely indebted to them. In 1870 he had given them his note for $10,000; in 1871 another note for $3,723.61; and in March, 1872, a third note for $3,009.55. To secure the payment of each of these notes, with interest at eight per cent per annum, he gave successive mortgages on his plantation, buildings, machinery, and stock, with an agreement in the last two mortgages to insure the buildings and machinery and to transfer the policies of insurance to the mortgagees for their better security, or, in default of doing this, that the mortgagees and all subsequent holders of the notes secured by those mortgages should have the right to effect such insurance at his expense. These mortgages were all given and recorded before Johnson & Goodrich procured the insurance now in question. Foster & Gwyn, in July, 1871, under the reserved right contained in the second mortgage, effected an insurance for one year upon the buildings and machinery, but did not renew the same. In the spring or summer of 1872, Foster & Gwyn being largely indebted to the appellants, transferred to them the three notes and mortgages of Green by way of collateral security, and the appellants rely on this security for making their claim against Foster & Gwyn.

Being thus the holders of the notes and mortgages of Green, the appellants claim the insurance money in question on two grounds: First, on the ground that although the insurance was effected in the name of Johnson & Goodrich, they acted merely as agents of Green, and the insurance was really taken out for his benefit; and he having agreed in and by the last two mortgages to insure the property for the benefit of the mortgagees

and to transfer the insurance to them, the appellants as holders of the notes and mortgages are equitably entitled to the insurance money. Secondly, on the ground, as the appellants allege, that when the insurance in question was about to be renewed in January, 1873, they were assured by Green and by Johnson & Goodrich that it was effected for the benefit of them, the mortgagees, or at least they were led to believe that this was so done.

An examination of the evidence in the case fails to convince us that the latter charge is true, at least so far as Johnson & Goodrich are concerned. Foster testifies that about the time of the renewal he, on behalf of the appellants called on Green at his plantation, and requested him to have the property insured, and that Green promised that he would write to Johnson & Goodrich to renew the insurance. The witness does not say, and Green in his answer denies, that he promised to have any insurance effected for the benefit of the mortgagees or the appellants; and the evidence is clear that Johnson & Goodrich had no such understanding. They regularly renewed their policy, and on the same day Gwyn called at their office and asked a clerk whether they had taken out a policy on the cotton-gin and buildings of Green, and the clerk answered that they had; and nothing more appears to have been said. Johnson & Goodrich both swear that they had no knowledge of the stipulation about insurance in the mortgages, or that Green was under any engagement to effect insurance, and that their only motive for effecting insurance on the property was to protect themselves. They charged the premiums to Green, it is true; but this they had a right to do under the circumstances, inasmuch as he authorized them to effect the insurance, and was entitled to any benefit to accrue therefrom after their claim against him was satisfied.

The appellants insist, however, that Johnson & Goodrich had no insurable interest in the buildings and machinery, and, therefore, that they have no lawful claim to any part of the insurance in question. But it does not lie in the mouths of the appellants to make this argument. If it has any force (which it is not necessary for us to decide), it can only be urged by the insurance company, and they do not urge it.

Since, therefore, there is no proof that Johnson & Goodrich

did not act with entire fairness in the whole transaction, and without notice of Green's covenant to insure; and since there was no privity between them and the appellants, we do not see how the latter can sustain any claim at law or in equity against them.

But as the debt due to Johnson & Goodrich will not exhaust the whole amount of the insurance, and as the balance rightfully belongs to Green, the question arises whether, as to that balance, the claim of the appellants is not maintainable. It is undoubtedly the general rule that a mortgagee has no right to the benefit of a policy taken by the mortgagor, unless it is assigned to him. *Carter* v. *Rockett*, 8 Paige (N. Y.), 436. But it is settled by many decisions in this country that if the mortgagor is bound by covenant or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed. *Thomas's Adm'rs* v. *Vankapff's Ex'rs*, 6 Gill & J. (Md.) 372; note to 3 Kent, Com. 376; Angell, Fire and Life Insurance, sect. 62; 2 Am. Lead. Cas. 834, 5th ed.; 1 Herman, Mortgages, sect. 424, and cases there cited. And this equity exists, although the contract provides that in case of the mortgagor's failing to procure and assign such insurance, the mortgagee may procure it at the mortgagor's expense. *Nichols* v. *Baxter & al.*, 5 R. I. 491. Of course the mortgagee's equity will be governed by the scope and object of the agreement; as, if the agreement be to insure for a certain amount, the equity will not apply beyond that amount; and as its object is to afford better security for the payment of the debt, it will not be enforced farther than is necessary for such security; if the debt is abundantly secured by the property which remains liable to the mortgage, a court of chancery would properly decline to enforce it. The present case, however, is not embarrassed by any questions of this sort. The appellants have proceeded to sell the immovable property mortgaged, which did not more than satisfy the first mortgage; and the amount of insurance money remaining after satisfying the claim of Johnson & Goodrich is less than the insurance stipulated for in the other mortgages.

The equitable doctrine upon which the appellants' claim is founded undoubtedly obtains in Louisiana. It is derived from the principles of the civil law, which is the basis of the civil code of that State; and it is supported by the authorities cited from the Louisiana reports. See Civil Code La., art. 1965; *Williams* v. *Winchester*, 7 Mart. N. s. (La.) 22; *Citizen's Bank* v. *Dugué and Louisiana State Bank*, 5 La. An. 12; *Braden* v. *Louisiana Insurance Co.*, 1 La. 220.

Our conclusion is, that the decree of the Circuit Court should be reversed, and the case remanded with instructions to enter a decree in conformity with this opinion; and it is

*So ordered.*