### HOWARD et al. v. DELGADO & CO.

(Circuit Court of Appeals, Fifth Circuit. March 10, 1903.)

#### No. 1,188.

1. EQUITABLE LIENS—ADVANCES TO BE REPAID BY SHIPMENTS—INSOLVENCY OF BORROWER BEFORE SHIPMENT.

Interveners made advances to defendant corporation, which was operating a central sugar refinery and a number of plantations, to enable it to carry on its business through the season, under a written contract by which the company agreed to ship all sugar products made at its refinery to interveners, who were to apply the proceeds in payment of the advances. Such advances, however, largely exceeded the amount called for by the contract. What sugar was shipped from the refinery was shipped to interveners, but, owing to a scarcity of cars, it accumulated in the refinery, and a quantity remained there at the time of the appointment of a receiver for the company. *Held,* that interveners were entitled to an equitable lien upon the sugar so remaining in the hands of the receiver, as against general creditors, under the maxim that equity regards that as done which ought to be done.

2. SAME—EXCLUSION BY STATUTORY LIENS—LAW OF LOUISIANA.

The law of Louisiana, although it makes no provision for liens aside from contractual privileges and mortgages, does not preclude the allowance and enforcement of an equitable lien by a federal court.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

Edward Rightor, for appellants.

John Clegg and Lamar C. Quintero, for appellees.

Before McCORMICK and SHELBY, Circuit Judges, and NEW-MAN, District Judge.

NEWMAN, District Judge. On the 18th day of January, 1902, the Caffery Central Sugar Refinery & Railroad Company was placed in the hands of a receiver on petition of a bondholder, without opposition on the part of the defendant company. The company had operated at Franklin, La., in the sugar country, in the parish of St. Mary, what is known in Louisiana as a "Central Refinery." Its main business consisted of buying sugar cane from the outlying plantations, and manufacturing it into sugar and molasses. It also appears to have operated three plantations—the Peoples, Foster, and Starling places. After the receiver had taken charge of the property, the appellees, Delgado & Co., filed their intervening petition in the cause, which intervening petition was as follows:

"The petition of intervention of Samuel Delgado and Isaac Delgado, and the commercial copartnership composed of the aforesaid persons, all residents of the city of New Orleans, state of Louisiana, with respect shows: That the Caffery Central Sugar Refinery and Railroad Company, Limited, is justly indebted to them in the sum of ninety-eight thousand four hundred and sixty ($98,460.15) dollars and fifteen cents, for this, to wit: That during the year 1901, and for the purpose of enabling the aforesaid defendants to make its crops and to manufacture the same into sugar and molasses, your petitioners, interveners, advanced and paid them large sums of money, which sums are entitled to a credit for the proceeds of certain sugars sold; that there is now due your petitioners for advances made as aforesaid, after deducting the credits that ought to be allowed, the sum of ninety-eight thousand four hundred and sixty and $15/100$ dollars, all of which more fully appears by the annexed detailed statement of account, which is made a part hereof, and is marked 'Exhibit A.' Your petitioners show that this sum and these advances thus made were made upon the special lien and privilege granted to your petitioners by agreement and contract made on the 13th day of February, 1901, in the city of New Orleans, by and between your petitioners and the said defendant company, wherein the aforesaid company agreed and stipulated for the advances to be made, the rate of interest being six per cent. from the dates of payments of drafts drawn by the president of the said defendant company, and stipulating further that, in order to secure your petitioners for the advances made, the said defendant company agreed and bound itself to ship all sugars produced by it, or produced under its direction, to your petitioners, and did specially pledge the said crops and sugars to your petitioners, granting them special lien and privilege upon all sugars, syrups, and molasses produced by said defendant company. Your petitioners show that they have a lien and privilege granted them by law as furnishers of supplies, and by virtue of the provisions of article 3217 of the Revised Civil Code of Louisiana. Petitioners further show that they have a lien and privilege granted them by law arising by virtue of their performance of their agreement made on the 13th day of February, 1901, as hereinbefore set out, which agreement is hereto annexed and made a part hereof, and marked 'Exhibit B.' Your petitioners show that during the year 1901 the defendant, with and by means of the aforesaid advances made, grew certain crops of sugar cane in the parishes of St. Mary and Iberia, state of Louisiana, on its own account; and that the said defendant company loaned and advanced to its tenants and to other cane growers sums of money advanced to it by petitioners, in order that these persons might be able to cultivate and harvest the crops of cane, and to grind and manufacture the same into sugar and molasses at the mill and factory of the defendant company. Your petitioners further show that they are entitled to a special lien and privilege on the crops of sugars, syrups, and molasses and the proceeds thereof, and are entitled to be paid by preference

over all others out of the proceeds of the sales of all these sugars, syrups, and molasses made by the said Caffery Central Sugar Refinery and Railroad Company, Limited, during the year or season of 1901. Your petitioners show that these sugars, syrups, and molasses manufactured during the year 1901, and during the season known as the season of 1901, out of the cane grown during the year 1901, are now in the factory or sugar house of the said defendant company, in the parish of St. Mary, or in the course of shipment, or in the city of New Orleans; that the same has been taken possession of by A. G. Brice, appointed receiver by the judge of this court, and are by him held subject to the order and disposition of this court. Your petitioners show that they are entitled to be paid \the proceeds of these sugars, syrups, and molasses, upon which they have a lien and privilege, as fast as the same are realized or received by the receiver aforesaid, until the amount aforesaid, advanced for the growing and manufacture of said sugars, shall have been paid to your petitioners. Wherefore, the premises considered, your petitioners pray leave to file this intervention, and that the same be ordered filed and heard, and that upon hearing there be judgment in favor of your petitioners, ordering and decreeing that A. G. Brice, Esq., receiver, pay to your petitioners out of the proceeds of any and all sugars, syrups, and molasses by him received, being the property of the Caffery Central Sugar Refinery and Railroad Company, Limited, grown and made during the year 1901, or season of 1901, the sum of ninety-eight thousand four hundred and sixty and $15/100$ dollars, or so much thereof as may be due to your petitioners after hearing, and that he be ordered and required to pay the sums over as fast and as soon as the same may come into his hands; and that A. G. Brice, Esq., the receiver, be ordered to hold separate and part from all other funds, the proceeds of all sugars, syrups, and molasses that have come or may come into his hands as receiver of said defendant company, subject to the privileges, liens, and pledge of your petitioners, and until the further order of this court. Petitioners also pray for all such further orders in the pemises as may be necessary to fully protect their rights, and as justice and right may require, and for all general relief."

Annexed to this petition was the contract between Delgado & Company and the Caffery Central Sugar Refinery & Railroad Company, Limited, which was as follows:

"This agreement entered into this 13th day of February, 1901, in the City of New Orleans, State of Louisiana, by and between The Caffery Central Sugar Refinery and Railroad Company, Limited, party of the first part, herein represented by H. Chapman, Esq., its general manager, duly authorized by its board of directors at a meeting of said board held on Saturday, January 26th, 1901; and Messrs Delgado and Co., a commercial firm of the City of New Orleans, La., party of the second part—Witnesseth:

"Whereas, the said party of the first part requires and will require throughout the sugar season of 1901 advances, or loans of money to the extent of eighty thousand (80,000) dollars, and whereas, the said Delgado and Company, party of the second part, is willing to make said advances or loans of money, therefore, it is hereby agreed and understood:

"That the said Delgado & Co., party of the second part, shall honor and pay all drafts drawn on said Delgado & Company by the Caffery Central Sugar Refinery and Railroad Company, Limited, party of the first part, through its general manager, H. Chapman, or any other duly authorized officer of said company, to the extent of eighty thousand (80,000) dollars, and shall charge interest on the amount of said drafts at the rate of six per cent. per annum from the respective dates of the payment of said drafts, and in order to secure said Delgado & Co., party of the second part, for the amount of said loans or advances, they shall retain the first mortgage gold bonds of the Caffery Central Sugar Refinery and Railroad Company, Limited, and of the Franklin and Abbeville Railroad Co., to the extent of thirty-seven thousand (37,000) dollars now held by them, and the said party of the first part agrees to ship to said Delgado & Co. all sugars produced by it, or produced under its direction, and the said party of the first part does

hereby grant unto the party of the second part a special lien and privilege on all of the said sugar produced."

On the 1st day of February this intervening petition was by the judge of the circuit court referred to William Grant, Esq., as special master, for examination and report. On the hearing before the special master the following facts developed: That Delgado & Co., by the written contract annexed to their petition, contracted to advance the Caffery Company the sum of $80,000, but without specifying for what purpose it was to be used. They, however, in fact advanced $299,074.66; as the same was required by the Caffery Company to enable it to cultivate its plantations and to purchase cane and to carry on the operations of the refinery. The contract specially provided that all the sugar and molasses manufactured should be shipped to Delgado & Co. With the exception of some small supplies advanced by other parties, they furnished all the funds used in conducting the operations of the Caffery Company from the beginning of 1901 to the date of the appointment of the receiver, January 19, 1902. During this period they received and sold all of the manufactured product of the refinery, from which they realized the net sum of $207,645.06. It appears further that while the amount agreed to be advanced by Delgado & Co. in the contract was $80,000, this stipulation was, by the tacit consent of both parties, disregarded. The Caffery Company continued to draw drafts against Delgado & Co., which they paid up to the sum of $299,074.66. The evidence shows, and the special master so found, that this large sum was advanced upon the stipulation on the part of Caffery & Co. to ship to Delgado & Co. all the sugar produced by the factory. It appears further that a considerable amount of sugar was on hand at the factory at the time the receiver was appointed, and of which he took possession, and the reason the sugar was not in the hands of Delgado & Co. was on account of the scarcity of cars on the Southern Pacific Railroad, over which the sugar should have been shipped. The first claim before the special master seems to have been that Delgado & Co., under the laws of Louisiana, were entitled to a contract lien under an act of the Legislature of Louisiana of 1874, and, further, to a "privilege" or priority of payment under the statutes of Louisiana. Whatever may have been true as to this, the special master found that any such right was extinguished by the amount realized by Delgado & Co. from sugar shipped to them by the Caffery Company, viz., $207,645.06. The question then arose—and upon that the case is now before this court—as to whether, under the facts of this case, and under the law and equitable principles applicable thereto, Delgado & Co. are entitled to an equitable lien giving them a priority of payment over general creditors out of the proceeds of sugar manufactured by the Caffery Company, and which went into the hands of the receiver and was sold by him, for the balance of their claim of $91,429.60.

This presents a most interesting question, and one not free from difficulty. It would be proper to inquire, first, whether, under the peculiar facts and circumstances of this case, Delgado & Co. would be entitled in a federal court, enforcing its own doctrine on the sub-

ject, and the doctrine generally recognized in the United States, to an equitable lien.

In Ketchum v. St. Louis, 101 U. S. 306, 25 L. Ed. 999, the doctrine is thus stated (syllabus):

"(3) Where a debtor, by an agreement with a creditor, sets apart a fixed portion of a specific fund in the hands, or to come into the hands, of another person, whom he directs to pay it to the creditor, the agreement is, when assented to by such person, an appropriation, binding upon the parties and all who, having notice, subsequently claim under the debtor an interest in the fund.

"(4) A party may, by agreement, create a charge or claim in the nature of a lien on real as well as personal property whereof he is the owner or in possession, and the court of equity will enforce against him, and volunteers or claimants under him with notice of the agreement."

In the case of Hauselt v. Harrison, 105 U. S. 401, 26 L. Ed. 1075, the creditor had advanced money for the purpose of purchasing skins to be tanned and finished. The case differs from this in the special respect that the creditor had obtained possession of the property on which he claimed an equitable lien, by reason of making advances to purchase the same. But the discussion of the case by Mr. Justice Matthews in the opinion is quite applicable to the case at bar.

In Walker v. Brown, 165 U. S. 654, 17 Sup. Ct. 453, 41 L. Ed. 865, Mr. Justice White, delivering the opinion of the court, states the doctrine (quoting from Pomeroy Eq. Jurisp. vol. 3, par. 1235) as follows:

"The doctrine may be stated, in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property so indicated, which is enforceable against the property in the hands, not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or incumbrancers with notice. * * * The ultimate grounds and motives of this doctrine are explained in the preceding section; but the doctrine itself is clearly an application of the maxim, 'Equity regards as done that which ought to be done.'"

The special master to whom this case was referred in the Circuit Court filed an able report, which, so far as it deals with this particular question, will appear from the following extract:

"Delgado & Company, having failed in establishing a statutory privilege for supplies furnished the Caffery Company, now claim an equitable lien on the product of the refinery in the hands of the receiver for the balance due on their account. It appears from the contract dated February 13, 1901, attached to their petition of intervention, offered in evidence, that the Caffery Company required, throughout the sugar season of that year, advances or loans of money, to the extent of $80,000, which Delgado & Company declared they were willing to make; the Caffery Company stipulating to ship to Delgado & Company all sugars produced by it, granting them a special lien and privilege on all said sugar produced. The contract is brief and somewhat unskillfully drawn, as is usually the case in agreements made between business men, but it sufficiently establishes the true relation between the parties, which was that of factor and client. The amount agreed to be advanced was $80,000, but the limit as to the amount agreed to be advanced seems, by tacit consent, to have been disregarded by both parties, for the Caffery Company continued to draw drafts against Delgado & Com-

pany for further advances, which they paid, up to the sum of $299,074.66. That this enormous amount was advanced by Delgado & Company on the faith of the stipulation to ship to them for their reimbursement all the sugar produced by the factory is too obvious to require argument. From the terms of the contract, the situation of the parties, their relation with each other, and all the surrounding circumstances, the inevitable conclusion must be drawn that the Caffery Company intended to bind itself to ship all the sugar it expected to manufacture from the crop of 1901 to Delgado & Company, to be by them sold, with authority to apply the proceeds to the payment of the amount due them on account, as Act No. 66 of 1874 would apply then, under such circumstances, the second and third sections of which creates a right of pledge in favor of the consignee for any balance of account due him from the time the bill of lading is put in the mail. The question, therefore, is whether the contract of the Caffery Company, by which it covenanted to ship to Delgado & Company all the sugar produced by it, should not be considered and treated by a court of equity as an existing pledge or equitable lien, under the maxim that equity considers that as done which ought to be done."

The special master then cites Walker v. Brown, supra, and the extract from Pomeroy's Equity Jurisprudence approved by the court in that case, and proceeds:

"Commenting on the character of proof necessary to bring a case within the rule, the court says: 'It is clear that if the express intention of the parties was to create an equitable lien, or if such intention arises by necessary implication from the terms of the agreement, construed with reference to the situation of the parties at the time of the contract, and by the attendant circumstances, such equitable lien will be implied by a court of equity.' In Re Strand Music Hall Co., 3 DeG., J. & S. 147, cited by the Supreme Court in Ketchem v. St. Louis, 101 U. S. 306, 25 L. Ed. 999, the court laid down the rule that where it appears it was intended to create a charge, and the parties who intended to create it had the power to do so, the court will give effect to the intention, notwithstanding any mistake which the parties may have made in attempting to effect it.

"The fact that the sugar was not promptly shipped to Delgado & Company after its manufacture, but was allowed to remain at the refinery at Franklin until after the receiver was appointed, is urged as a circumstance which repels the presumption that the money in this case was advanced on the faith of any agreement that they were to be reimbursed from the sale of the sugar. But whatever force this fact might ordinarily have is done away with by the explanations given by Mr. Isaac Delgado, who says that in the fall of that year, when the refinery commenced grinding, sugar accumulated, and the Caffery Company would want more money and ask for payment of drafts, promising to ship the sugar by the Southern Pacific R. R., but owing to the scarcity of cars the sugar would not come for one or two weeks. The manager would state that he was using his best efforts to get the sugar down to pay drafts. Delgado & Company would hesitate to pay the drafts unless they had a promise to ship sugar to repay them, but that shipments were delayed by the scarcity of cars:

"The case of Express Co. v. Railroad Co., 99 U. S. 191, 25 L. Ed. 319, does not conflict with the doctrine of the court in Walker v. Brown, as has been suggested. In that case an equitable lien was sought to be enforced upon the property of a railroad company in the hands of a receiver, appointed for the benefit of mortgage creditors who do not appear to have notice of the asserted lien; and it may be conceded that as to such creditor the lien could not be enforced under the rule established in the case of Walker v. Brown. There is no conflict between the two cases, but, if there is, the decision in the latter case must prevail.

"I conclude that Delgado & Company are entitled to the equitable lien claimed by them in this case, and have included them in Schedule D, hereto annexed, as entitled to be paid out of the proceeds of the cane manufactured in the Caffery Refinery, by preference over ordinary creditors."

The special master seems to have assumed that, if an equitable lien existed in favor of Delgado & Co., it would be enforced in this case, as it would elsewhere, although arising in Louisiana. It is contended, by the creditors opposing Delgado & Co.'s lien, that the law of Louisiana is prohibitive in this respect: that unless the creditor has a contractual lien or privilege under the laws of the state he can have no other lien or priority of payment. They contend that an equitable lien which would arise elsewhere by reason of a contract, express or implied, between the parties, has no existence in the state of Louisiana, and that a federal court sitting in Louisiana will not recognize or enforce such a lien. Unquestionably, equitable relief, generally speaking, will be granted in Louisiana in proper cases.

Article 21 of the Civil Code of Louisiana is as follows:

"In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent."

A portion of article 1965 of the Civil Code is in these words:

"* * * When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity."

In Wheeler v. Insurance Company, 101 U. S. 439, 25 L. Ed. 1055, taken to the Supreme Court on appeal from the Circuit Court of the United States for the District of Louisiana, the case was, as is this, in all respects a Louisiana one. One firm of factors had taken out insurance on the buildings, gin house, machinery, and cotton of a planter to secure an indebtedness by the planter to the factor. The property was burned, and the insurance was more than sufficient to pay the debt of the firm of factors who had taken out the insurance. Another firm of factors had transferred to the appellant Wheeler certain mortgages which they held on the property which had been covered by the insurance, and he, as transferee of the mortgagees, claimed an equitable lien on the overplus in the hands of the insurance company. On this branch of the case, the Supreme Court, in an opinion by Mr. Justice Bradley, said:

"But as the debt due to Johnson & Goodrich will not exhaust the whole amount of insurance, and as the balance rightfully belongs to Green, the question arises whether, as to that balance, the claim of the appellants is not maintainable. It is undoubtedly the general rule that a mortgagee has no right to the benefit of a policy taken out by the mortgagor, unless it is assigned to him. Carter v. Rockett, 8 Paige, 437. But it is settled by many decisions in this country that, if the mortgagor is bound by covenant or otherwise to insure the mortgaged premises for the better security of the mortgage, the latter will have an equitable lien upon the money due on the policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed. Thomas' Adm'rs v. Vonkapff's Ex'rs, 6 Gill & J. 372; note to 3 Kent, Com. 376; Angell, Fire and Life Insurance, § 424, and cases there cited. And this equity exists, although the contract provides that, in case of the mortgagor's failing to procure and assign such insurance, the mortgagee may procure it at the mortgagor's expense. Nichols v. Baxter et al., 5 R. I. 491. Of course, the mortgagee's equity will be governed by the scope and object of the agreement; as, if the agreement be to insure for a certain amount, the equity will not apply beyond that amount, and, as its object is to afford better

security for the payment of the debt, it will not be enforced farther than is necessary for such security; if the debt is abundantly secured by the property which remains liable to the mortgage, a court of chancery would properly decline to enforce it. The present case, however, is not embarrassed by any questions of this sort. The appellants have proceeded to sell the immovable property mortgaged, which did not more than satisfy the first mortgage; and the amount of insurance money remaining after satisfying the claim of Johnson & Goodrich is less than the insurance stipulated for in the mortgages. The equitable doctrine upon which the appellants' claim is founded undoubtedly obtains in Louisiana. It is derived from the principles of the civil law, which is the basis of the Civil Code of that state; and it is supported by the authorities cited from the Louisiana Reports. See Civ. Code, La. art. 1965; Williams v. Winchester, 7 Mart. (N. S.) 22; Citizens' Bank v. Dugue and Louisiana State Bank, 5 La. Ann. 12; Braden v. Louisiana Insurance Co., 1 La. 220 [20 Am. Dec. 277]."

While it is true, as claimed by counsel for appellants in the case at bar, that the facts of that case are different from the facts in this, we are unable to see why, in principle, the cases are not alike. If an equitable lien would exist and be enforced in the case cited, we are wholly unable to see why it should not exist and be enforced in the case now before the court.

In the case of Burdon Sugar Refining Co. v. Payne, 167 U. S. 127, 17 Sup. Ct. 754, 42 L. Ed. 105, in the opinion by the chief justice (page 147, 167 U. S., page 758, 17 Sup. Ct., 42 L. Ed. 105) on the precise question now before the court, this was said:

"If it was within the power of the contracting parties to create an equitable lien upon the bounty collected, the terms of the contract effectuated that purpose. Walker v. Brown, 165 U. S. 654, 17 Sup. Ct. 453, 41 L. Ed. 865, and cases cited. The right of the parties, however, by the contract, to create an equitable lien, and the power of a court of equity to enforce such lien, is denied upon the ground that as, by the provisions of the law of Louisiana, equality of distribution is the rule among creditors, and preferences can only result from privileges and mortgages, and as the subject-matter from which the lien here arose was not one of the cases to which the law of Louisiana gives a privilege, therefore an equitable lien could not be created by contract or enforced in violation of the terms of the statutes of Louisiana. But, without passing on the correctness of this proposition, we think it has no relation to the matter under consideration. * * * The right to collect the bounty having arisen from a law of the United States, and the provisions of that law creating a necessary relation between the grower and the manufacturer, making them, in effect, joint producers of the sugar, the right to the equitable lien stipulated by the contract was not controlled by the provisions of the local law of Louisiana, even although as a general rule—and in regard to this we express no opinion—the effect of that law would be to deprive contracting parties, except when expressly allowed, of the right to contract for an equitable lien, and to deny to courts of equity the power to enforce the same."

The most that can be said for this case is that the question now under consideration is left by the Supreme Court an open one.

Counsel for appellants has cited us in his brief, and alluded in oral argument, to quite a number of cases decided by the Supreme Court of Louisiana, which it is urged support his contention that an equitable lien, as claimed in this case and as has been herein discussed, is unknown to the law of Louisiana. We have examined the cases cited, and are unable to, see that they support his contention. Indeed, some of the cases, we think, may be regarded as sustaining a contrary view.

It is contended for the appellants that the pleadings in the case, namely, the intervening petition of Delgado & Co., as above set forth, did not set up the right of the interveners to an equitable lien, or pray for the allowance of the same in such terms as would justify the master in granting it. We have had some difficulty on this question, but we think, inasmuch as the petition set out all the necessary facts, and contained substantially a prayer for priority of payment, that it is sufficient, particularly as it would certainly have been amendable, and the only effect of sending the case back upon that ground, having expressed the views we have on the merits, would be that the petition would then be amended, and the same result follow.

It results from the foregoing that there was no error in the action of the Circuit Court in overruling the exceptions to the master's report, which report granted to Delgado & Co., under the facts and circumstances of this case, an equitable lien, to be paid out of the proceeus of the cane manufactured in the Caffery Refinery by preference over ordinary creditors.

The judgment of the Circuit Court is therefore affirmed.