329 So.2d 868 (1975)
James B. DAVIS, Plaintiff-Appellant,
v.
AETNA CASUALTY & SURETY COMPANY et al., Defendants-Appellees.
No. 12760.
Court of Appeal of Louisiana, Second Circuit.
December 9, 1975.
On Rehearing March 15, 1976.
Rehearing Denied April 19, 1976.
Writs Refused April 30, June 11, 1976.
*869 Glen H. Smith, James L. Fortson by James L. Fortson, Shreveport, for plaintiff-appellant.
Lunn, Irion, Switzer, Johnson & Salley by Richard H. Switzer, Shreveport, for defendants-appellees.
Before HALL, MARVIN and HEARD, JJ.
En Banc. Rehearing Denied April 19, 1976.
HEARD, Judge.
This case, before us for the second time, presents only the issue of correctness of the district judge's order denying plaintiff penalties and attorney's fees against the insurer. The issues of liability, the amount of damage, and the proper parties have already been determined in favor of plaintiff. The facts and circumstances of the suit were stated in our previous decree rendered April 23, 1974, in which we ordered the suit remanded for further proceedings. See Davis v. Aetna Casualty and Surety Company, 293 So.2d 906 (La.App.2d Cir. 1974).
We shall reiterate only the chronology of the facts necessary to a determination of whether defendants' actions were arbitrary and capricious in refusing to make payment under its flood insurance policy within the 60-day period required by Louisiana Revised Statutes 22:658. That act provides:
"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies *870 covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees." (Emphasis supplied)
The policy of flood insurance upon which this claim was based was purchased by James Davis on May 23, 1973. Said policy was issued on a National Flood Insurers Association policy form, with Aetna Casualty & Surety Company named as the servicing company. On July 7, 1973, plaintiff's premises were damaged by flood and he timely furnished defendants with sufficient proof of loss. On September 11, 1973, National Flood Insurers Association issued its draft for $5,924.08 payable to James B. Davis and Blaylock Investment Corporation.
On October 9, 1973, less than a month after receipt of the check, Davis notified defendants by letter that he refused to accept the check as written, and demanded that a new check be issued to him individually. This demand was based on his stated contention that since the flood insurance policy contained the letters "N/A" in the space reserved for the mortgagee's name, if applicable, Blaylock Investment Company should not have been made a co-payee on the check. This letter further advised defendants that plaintiff did not consider the check to be a proper tender of payment under the terms of the policy; that if the check was not rewritten payable to James B. Davis only, omitting Blaylock Investment Corporation as a payee, suit would be filed immediately asking for penalties, interest and attorney's fees.
This request was either ignored or refused and plaintiff filed suit December 17, 1973, more than six months after the flood. On January 3, 1974, defendants moved for summary judgment in response to which plaintiff filed an opposition, attaching thereto two affidavits. The first affidavit was signed by plaintiff and was to the effect that the subject policy was not the policy required by the lending agency which financed his home; that he was only required to obtain the homeowners policy which names Blaylock as mortgagee in the loss payable clause, the premiums for that policy were paid through an escrow account set up by Blaylock; further, that subject policy was paid for solely by plaintiff and it contained the letters "N/A" in the space provided for naming the mortgagee, if any. The second affidavit was made by the agent, or broker, who had signed the subject policy, and reiterated the information contained in the first affidavit.
The trial court rendered judgment on the motion for summary judgment in favor of defendants, denying penalties and attorney's fees, and ordered plaintiff to make Blaylock Investment Company a party to the suit within ten days, failing which the motion for summary judgment would be sustained and plaintiff's suit dismissed as of nonsuit.
Plaintiff applied for writs of certiorari, prohibition and mandamus to this court, which writs were granted and the case was heard and decision was rendered as stated in our previous opinion cited above.
Thereafter, on May 6, 1974, defendants filed an answer to the original petition and a concursus proceeding alleging that Blaylock Investment Corporation "has formally made demand upon respondents that the proceeds of said policy covering said loss be paid to it, as provided in its mortgage." Defendants also prayed that Blaylock Investment Corporation be ordered to appear and assert such claim as it might have to the monies deposited in the registry of the court.
Blaylock answered the concursus May 21, 1974, and for the first time demanded payment to it of the $5,924 deposited in the registry of the court.
May 22, 1974, plaintiff filed a pleading entitled "Dilatory Exceptions of Unauthorized *871 Use of Concursus Proceeding, Prematurity, Failure of Petition to Comply with Formal Requirements, and Improper Joinder of Parties." In this pleading plaintiff showed that on September 20, 1972, Blaylock had, by authentic act, assigned the note and mortgage covering plaintiff's property to the Dime Savings Bank of New York, and thus Blaylock had no interest in the pending litigation.
On October 15, 1974, Blaylock Investment, joined by the Dime Savings Bank of New York, filed a motion and order to dismiss, in which they stated "appearers now desire to withdraw their claim as to the funds and request that their claim and answer to concursus be dismissed with prejudice."
Plaintiff filed his second motion to withdraw funds from the registry of the court on October 17, 1974, in which he asked for judgment for the funds on deposit and that all his rights to penalties and attorney's fees be reserved.
November 15, 1974, the court below rendered judgment denying plaintiff's motion because of the attempted reservation of his right to claim penalties and attorney's fees. Thereafter, on March 6, 1975, the district judge rendered a judgment reversing his position and stated his opinion as follows:
"It is the opinion of this court that in order to be consistent with the directions from the upper court . . . and in order to avoid payment of penalties and attorney's fees, the defendant would have to have filed its concursus (if a concursus is to be considered within said directions) either before suit is filed initially, or in answer to the original suit, rather than after the case has gone to the Court of Appeal and back. By filing the concursus proceeding the defendant has perhaps protected itself from double liability, but has not necessarily freed itself from the obligation of liability for penalties and attorney's fees.
"Defendant insurance company (and this court) misinterpreted its obligations under the policy. Defendant acted at its own risk. Because it misinterpreted the legal effect of its obligations under the policy, and because of the long delay occasioned thereby it is liable for interest, penalties and attorney's fees.
"Let there be judgment for plaintiff for the proceeds of the policy amounting to $5,924.08, plus 12% penalty amounting to $710.88, plus $3,500.00 attorney's fees or a total of $10,134.96, with legal interest from judicial demand and all costs of these proceedings."
Judgment in accordance with the foregoing opinion was rendered March 12, 1975, and on March 14, 1975, Aetna and National moved for a new trial, which was granted. On May 28, 1975, the district judge rendered judgment, again reversed itself, and gave judgment in favor of defendants against plaintiff, rejecting Davis' demands for penalties and attorney's fees and casting plaintiff with costs of the concursus and all costs accruing subsequent to the filing thereof on May 6, 1974.
It is from this last judgment plaintiff has appealed. Appellant urges on appeal that the lower court erred in finding that defendants, by filing the concursus proceeding, were relieved from liability for penalties and attorney's fees for failure to pay plaintiff's claim, which insurers admitted owing, within 60 days from the date of the receipt of the proof of claim, as provided in La.R.S. 22:658.
Appellee argues the trial court was correct in rejecting plaintiff's claims for penalties and attorney's fees for the reason that Blaylock held a mortgage on plaintiff's property, which mortgage contained a clause providing:
"8. If the property covered hereby, or any part thereof, shall be damaged or destroyed by fire or other hazard against which insurance is held, the amounts due *872 by any insurance company shall, to the extent of the indebtedness then remaining unpaid, be paid to creditor, and, when so paid, may, at its option, be applied to the debt or be used for the repairing or rebuilding of the said property."
In support of their contention that the flood insurance payment due was subject, under the above clause, to be paid to Blaylock, the original holder of the mortgage note, appellees cite Wheeler v. Factors' and Traders' Insurance Co., 101 U.S. 439, 25 L.Ed. 1055 (1880) and 5 Couch on Insurance 2d Ed. §§ 29:82 and 29:88.
While we are cognizant of the equitable lien theory enunciated in Wheeler and the recitation of the general law of equitable liens in the cited sections of Couch, we nevertheless are bound by the statutory rules with regard to the imposition of penalties and attorney's fees against an insurer who fails to pay timely an insurance claim after sufficient notice of a loss had been received.
In the instant case defendants received notice of the loss on or before September 11, 1973, when they attempted to make a tender of the full amount of the claim by check made payable to Davis and Blaylock. The letter rejecting this purported tender and returning the draft was dated October 9, 1973. The attempt of defendants' attorney to obtain the endorsement of Blaylock on the check in January, 1974, did not constitute tender to plaintiff of the amount of the claim. No further effort was made to pay the claim until the concursus was filed on May 6, 1974.
The insurer is charged with knowledge of its policy contents and where the policy is clear and free of ambiguity, it constitutes the law between the parties and must be enforced as written. Louisiana Civil Code Articles 1945 and 1946. The instant policy contains no ambiguities since there is no dispute the letters "N/A" were interpreted by each of the parties to mean "not applicable". If the insurer was anxious to avoid the possibility of having to pay the claim twice, i.e., to Davis and to Blaylock, some effort should have been made by the insurers to determine whether Blaylock had a valid claim against the funds within the 60-day period following the submission by plaintiff of his proof of loss. We find the record is devoid of evidence of any demand by Blaylock until after the filing of the concursus proceeding in May, 1974, more than nine months after the proof of loss.
In Agency Management Corporation v. Green Acres Realty, Inc., et al, 286 So.2d 465 (La.App.1st Cir. 1973), the court held:
"As heretofore shown, the contract of insurance is strictly a personal contract, and never runs with the property insured. Accordingly it follows that where the mortgagor independently insures his own interest in the mortgaged premises, without reference to any contract with the mortgagee, the proceeds of such insurance in case of destruction of the property belong solely to the mortgagor, freed from any lien or other claim by the mortgagee. This rule obtains even though there may be a stipulation in the mortgage contract providing that the mortgagee may insure and charge the premiums to the mortgagor, to be covered by the security of the mortgage." Hartford Fire Insurance Co. v. Landreneau, 19 La.App. 280, 140 So. 52 (1st Cir. 1932). (Emphasis added)
Furthermore, in the same case the court peripherally addressed the issue of a concursus proceeding and indicated that for this to relieve an insurer from liability for penalties and attorney's fees, the concursus must be invoked at the time the claim is denied, not later on, or well into the proceedings.
It is apparent Aetna simply misinterpreted the provisions of its own policy and *873 based the refusal to pay on this misinterpretation. Thereafter, defendants' attorney took a position which would tend to minimize the arbitrary and capricious nature of defendants' action. In Broussard v. National American Life Insurance Co., 302 So.2d 627, 631 (La.App.3d Cir. 1974), the court said:
"(6) An insurer must take the risk of misinterpreting its policy provisions. When it misinterprets its own contract, this does not necessarily constitute reasonable ground for refusing payments of benefits, and will not automatically relieve the insurer of an assessment of penalties and attorney's fees. Albert v. Cuna Mutual Insurance Society, 255 So.2d 170 (La.App.3 Cir. 1971)."
In Walker v. Fidelity Bankers Life Insurance Company, 302 So.2d 397, 399 (La.App.1st Cir. 1974), the court held:
"We find this argument to be sound. The insurance contract, free of ambiguous language, determines the rights and duties of the parties, and must be enforced as it is written. LSA CC Arts. 1901, 1905. Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111; Vidrine v. Southern Farm Bureau Cas. Ins. Co., 247 So.2d 660 (La.App.3d Cir. 1971)."
We conclude the actions of defendants in failing to pay the amount of the loss under the insurance policy to plaintiff within 60 days after submission of the necessary proof of loss were arbitrary and capricious within the meaning of La.R.S. 22:658.
In the judgment dated March 12, 1975, later reversed by the trial judge, he awarded $3,500 as attorney's fees. We find that amount was reasonable for the time and efforts expended by plaintiff's attorney prior to that time. For the litigation and efforts in the court below and here since that time, we believe an additional amount of $1,500 is reasonable.
For the reasons assigned the judgment of the lower court authorizing plaintiff to withdraw the sum of $5,924.08 on deposit in the registry of the court is affirmed; that portion of the judgment denying penalties and attorney's fees is reversed and it is now ordered that there be judgment in favor of plaintiff, James B. Davis, and against defendants, Aetna Casualty & Surety Company, Inc., and National Flood Insurers Association, in solido, for 12% penalty on the amount of the loss as damages, amounting to $710.89; it is further ordered that there be judgment in favor of plaintiff and against defendants for $5,000 attorney's fees, for a total of $5,710.89, together with legal interest from judicial demand until paid, and for all costs of these proceedings.
Before BOLIN, PRICE, HALL, MARVIN and SMITH, JJ.

ON REHEARING
BOLIN, Judge.
On the motion of defendants-appellees, we granted a rehearing to reconsider our original decision awarding plaintiff penalties and attorney fees under Louisiana Revised Statutes 22:658 for defendants' arbitrary and capricious refusal to pay plaintiff's claim under a policy of flood insurance within sixty days of receiving the insured's proof of loss statement.
Defendants' original application for rehearing specifies this court erred (1) in finding defendants did not make a tender of the amount due under plaintiff's claim; (2) in holding defendants' refusal to pay the claim was arbitrary and capricious, entitling plaintiff to statutory penalties and attorney fees; and (3) in awarding greater attorney fees than plaintiff prayed for in his original petition.
By supplemental petition for rehearing defendants attempt to raise for the first time the question of whether Congress has pre-empted the field of regulation by enacting *874 the National Flood Insurance Act, 42 U.S.C.A. § 4001, et seq. If the field is pre-empted, defendants contend the provision in the Louisiana Revised Statutes which allows penalties and attorney fees for the arbitrary refusal of an insurer to pay a claim would not be applicable to this case.
After careful consideration of the first two errors alleged by defendants, we reaffirm our original finding that defendants did not timely pay plaintiff's claim and that defendants' failure to do so was arbitrary and capricious.
In connection with the question of federal pre-emption, plaintiff contends this argument cannot be considered because it is an affirmative defense which must be plead in defendants' answer. Code of Civil Procedure Article 1005. Without passing on plaintiff's procedural objection, we choose to dispose of this new issue because it could be contended plaintiff has failed to state a cause of action since the federal legislation does not have a provision similar to R.S. 22:658. Although defendants did not file an exception of no cause of action, Code of Civil Procedure Article 927 provides that an appellate court may consider such an exception on its own motion. Assuming for the purpose of argument only that the issue of pre-emption is properly before us, we hold, for the following reasons, that Congress did not pre-empt the field when it enacted the National Flood Insurance Act.
In enacting and amending the National Flood Insurance Act, Congress recognized that the disastrous personal and property losses occasioned by flood were a nationwide problem; that the federal government had spent vast sums of money in disaster relief and flood prevention; that these efforts by the government had not been sufficient to protect against the growing exposure to future flood losses; and that a program of flood insurance made available at reasonable premium rates would share the risk of flood losses and encourage preventive and protective measures against floods. 42 U.S.C.A. §§ 4001 and 4002.
Among the purposes of the Act were the following: (1) to provide for flood insurance on a nationwide scale at a reasonable cost; (2) to provide for identification of flood-prone areas; (3) to require states or local communities, as a condition of future federal financial assistance, to participate in the flood insurance program and to adopt adequate flood plain ordinances; and (4) to require the purchase of flood insurance by property owners who are being assisted by federal programs or by federally supervised, regulated, or insured agencies or institutions in the acquisition or improvement of land or facilities located or to be located in identified areas having special flood hazards. 42 U.S.C.A. §§ 4001 and 4002.
To achieve these purposes, the Act provides for the creation of a pool of risk-bearing private insurance companies. With the help of federal subsidies, the association of companies would make flood insurance up to certain amounts available at a reasonable premium cost. The Secretary of Housing and Urban Development is given broad authority to prescribe regulations necessary to carry out the purposes of the Act. Claimants under policies issued pursuant to the Act are given access to the federal courts without regard to the amount in controversy for a period of one year following the denial of their claims.
The broad general rule of pre-emption has been stated thusly:
The doctrine of federal preemption stems from the supremacy clause of the Constitution:. . . Under that clause, "[o]ccupation of a legislative `field' by Congress in the exercise of a granted power is a familiar example of its constitutional power to suspend state laws." . . . When such preemption occurs, any state law is inapplicable to an issue which arises in that "field." Moreover, "[i]t has long been the rule that exclusion *875 of state action may be implied from the nature of the [Congressional] legislation and the subject matter although express declaration of such result is wanting."
. . . . . . .

Meyers v. Beverly Hills Federal Savings & Loan Ass'n, 499 F.2d 1145 (9th Cir., 1974)
In Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Ware, 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973), the court held that certain rules of the New York Stock Exchange, promulgated as self-regulating measures pursuant to Section 6 of the Securities Exchange Act of 1934, and a broker-employee's pledge to abide by those rules, did not pre-empt avenues of wage relief otherwise available to the employee under the state law of California. In discussing pre-emption, the court stated:
Mr. Justice Brennan has stated:
"The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 1163, 10 L.Ed.2d 248 (1963).
In other contexts, pre-emption has been measured by whether the state statute frustrates any part of the purpose of the federal legislation. Colorado Anti-Discrimination Comm'n v. Continental Air Lines, Inc., 372 U.S. 714, 724, 83 S.Ct. 1022, 1027, 10 L.Ed.2d 84 (1963); Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); Rice v. Board of Trade, 331 U.S. 247, 253-255, 67 S.Ct. 1160, 1163, 91 L.Ed. 1468 (1947). And only last term Mr. Justice Douglas, in speaking for the Court, observed that while prior cases on pre-emption "are not precise guidelines," because "each case turns on the peculiarities and special features of the federal regulatory scheme in question," it is where there is in existence a pervasive and comprehensive scheme of federal regulation that pre-emption follows in order to fulfill the federal statutory purposes. City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 638-639, 93 S.Ct. 1854, 1862, 36 L.Ed.2d 547 (1973).
Defendants have called our attention to a ruling on October 10, 1975, by the United States District Court for the Western District of Louisiana, involving the precise issue now before the court, which held R.S. 22:658 was not applicable. The ruling is not a final disposition of the entire case in question and may never be reported. While we attach no particular value as precedent to that court's ruling, we have considered the argument presented therein and find it to be unpersuasive.
In Edina State Bank v. Mr. Steak, Inc., 487 F.2d 640 (10th Cir., 1973), certiorari denied 419 U.S. 883, 95 S.Ct. 150, 42 L.Ed.2d 123, the court was presented with a situation analogous to the one now before us. The state statute at issue there imposed a duty on the issuer of stock to show any transfer restrictions conspicuously on the face of the stock certificate. Any restriction not so noted would be ineffective against one without actual knowledge of it. The Securities Act of 1933 did not impose such an obligation. In reversing the district court's holding that the federal act had pre-empted the field, rendering the state statute ineffective, the court stated:
We cannot agree that the absence of a requirement for a notation of the restriction in the federal statute overrides § 8-204 under the doctrine of preemption. As further discussed below we feel that this important provision of the Code may be read in harmony with the federal statute. Both regulations can be enforced without impairing federal super-intendence *876 of the field and thus the state statute need not give way. . . . We feel the Securities Act shows no intent to prevent such significant regulation by state law. . . . We are satisfied the federal statute should not be held to override § 8-204.
We believe the same reasoning applied to our case. Revised Statutes 22:658 does not tend to frustrate the purposes of the Act as declared by Congress. Our statutory provisions provide a penalty for the arbitrary and capricious refusal of certain types of insurers to timely pay valid claims under policies they issue. It does not discriminate between companies. It is designed to protect the insured and to facilitate the prompt settlement of his claims. Our statute may be read in harmony with the Act and does not interfere with the achievement of the Act's goals.
Nor do we believe Congress intended to bar the application of the type statute involved in this case. The statute does not operate solely against flood insurers, nor does it deal with the substantive area of flood insurance. Rather, it concerns itself with a peripheral area involving prompt settlement of claims. Moreover, the federal act basically deals with the organization of the national program and the relationship between the government and the insurance companies making up the pool while our statute deals with the relationship of the insured and the insurer.
Accordingly, we hold that Congress did not pre-empt the field of regulation in enacting the National Flood Insurance Act so as to preclude the application of R.S. 22:658.
The remaining issue is whether we may award plaintiff attorney fees of $5000 when he only prayed for $2500 in attorney fees in the event the case was appealed.
Defendants contend a party may not be awarded more attorney fees than he prayed for in his petition. Plaintiff argues that Code of Civil Procedure Articles 862 and 2164 vest this court with the power to award attorney fees in an amount it finds to be proper and just regardless of the amount he prayed for in his petition.
We disagree with plaintiff's interpretation of these articles of the Code of Civil Procedure. These articles are not controlling in the area of special damages. Article 861 provides items of special damage must be specifically alleged. In this case there was no evidence offered on the amount of attorney fees and, therefore, by the clear and unambiguous language of C.C.P. Art. 861, plaintiff may not recover more attorney fees than he alleged to be due, i. e., $2500.
For the reasons assigned our original decree is amended to reduce the amount awarded as attorney fees from $5,000 to $2,500. As thus amended our original decree is reinstated.