275 So.2d 922 (1973)
Calvin A. DIAZ, Sr.
v.
CHEROKEE INSURANCE COMPANY.
No. 5279.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 1973.
Rehearing Denied May 1, 1973.
*924 Guy J. D'Antonio, New Orleans, for plaintiff-appellee.
Bienvenu & Culver, Leonard A. Young, New Orleans, for defendant-appellant.
Before LEMMON, STOULIG and BOUTALL, JJ.
LEMMON, Judge.
This is a suit on an insurance policy to recover a loss allegedly caused by vandalism and malicious mischief. The principal issue on appeal is whether plaintiff, a second mortgagee, is entitled to coverage under the policy. Incidental issues involve the amount, date and cause of the damages and the penalties and fees claimed by plaintiff on account of defendant's refusal to pay the loss.
On October 5, 1967 defendant issued to Gilbert E. Martin a Homeowners Policy on his newly constructed home. The policy named Fidelity Homestead Association as first mortgagee, but failed to list plaintiff, whose second mortgage was executed simultaneously with Fidelity's mortgage.
Fidelity filed foreclosure proceedings in February, 1970, and the Martins moved out on March 9, 1970. Employees of the moving company described the condition of the premises as "deplorable," especially referring to the condition of the carpets. Since they did not observe any broken glasses, ceilings and fixtures, nor any paint spread on the walls and floors, these items of damage, which form a substantial portion of plaintiff's claim had apparently not yet occurred.
On April 3, 1970 a bill collector discovered the damaged condition of the premises. On April 16 Fidelity notified the insurance agent of the foreclosure and of the damage to the property, stating that "as the mortgagee named in this policy, we shall require you to cover the damage."
In an earlier conference with Fidelity's attorney, who had also passed the act of second mortgage, plaintiff learned that his name had been omitted from the policy as mortgagee. On April 20, 1970 he notified the agent of the loss and of his status as mortgagee. On April 21 the agent issued an endorsement naming plaintiff as second mortgagee, effective March 20 (the date plaintiff claims to have discovered the omission).
On April 23, 1970 plaintiff purchased the subject property at a judicial sale in the foreclosure proceedings.
When defendant declined to pay the claim upon presentation of proof of loss, plaintiff filed this suit. After a trial on the merits judgment was rendered in favor of plaintiff for a portion of the amount of loss claimed. Defendant appealed, and plaintiff answered the appeal, seeking an increase in the award to the full amount claimed, as well as penalties and attorney's fees.

INSURANCE COVERAGE
It is virtually impossible to produce direct evidence as to the exact date and cause of damage believed to be caused by vandalism. Convincing circumstantial evidence therefore constitutes sufficient proof.[1] Considering the testimony of the movers and the bill collector, we conclude that the trial judge did not commit manifest error in finding vandalism had occurred on the premises between March 9 and April 3, 1970.
During that period Martin as owner was covered against all losses from vandalism to the subject property. Fidelity as mortgagee was likewise covered to the extent of its interest. However, defendant contends that plaintiff is not entitled to coverage because he was not named in the policy.
*925 By naming the mortgagee as loss payee, an insured in effect constitutes the mortgagee as his appointee to receive payment, in the event of a loss, of the insurance proceeds up to the extent of the mortgagee's interest. Officer v. American Eagle Ins. Co., 175 La. 581, 143 So. 500 (1932). The insurer's insertion of the mortgagee's name in the policy amounts to recognition by the insurer of the mortgagee's interest and of his appointment by the mortgagor to receive some or all of the proceeds in the event of a loss. 5A Appleman, Insurance Law and Practice, Ch. 148, § 3335, p. 143 (1970).
In the present case Martin agreed in the act of second mortgage to keep the property insured and "to transfer such insurance and deliver the policies to the Mortgagee." He then purchased the required policy in accordance with this covenant. Where the mortgagor is required by the mortgage to keep the property insured and takes out a policy of insurance pursuant to this obligation, the mortgagee is not estopped to claim the proceeds by having neglected to require the inclusion of a loss payable clause.[2] Appleman, supra, Ch. 150, § 3381, p. 243; 5 Couch, Cyclopedia of Insurance Law, Ch. 29, § 29:67, p. 352 and § 29:82, p. 366 (2nd Ed. 1960). Furthermore, since all mortgagees are routinely listed in the policy with no additional premium charged, Martin apparently intended to cover plaintiff when he purchased the required policy and named Fidelity as mortgagee.
In issuing the policy, defendant agreed to cover the owner of the property and to pay any mortgagee named in the policy in the order of precedence of the mortgages. Although the policy provides that the mortgagee clause is void unless the name of the mortgagee is inserted in the declarations, this provision simply protects the company when the unnamed mortgagee questions an allegedly wrongful payment to the insured mortgagor or some other party in interest. In this case neither the insured mortgagor nor the named mortgagee made a claim for the loss. The contest was between the mortgagee and the insurance company over the proceeds of a policy purchased for the mortgagee's protection, as required in the mortgage, this requirement itself being a convincing indication of the mortgagor's intention to include the mortgagee in the policy. Under these circumstances, where the second mortgagee's name is omitted from the policy and the surrounding circumstances indicate that the interest of the second mortgagee was intended to be covered, the insured cannot escape completely from payment of the loss on the basis of this omission.
There is no doubt that the plaintiff in this case would be entitled to recovery from the insurer if he had been named in the policy as mortgagee. The issue is whether the mortgagor's failure to name plaintiff, as required by the mortgage, precludes plaintiff's recovery from the insurer in the absence of conflicting claims by the insured or the named first mortgagee. We conclude that since the mortgagor was obligated to provide coverage to plaintiff as second mortgagee and presumably intended to do so at the inception of the policy, plaintiff is entitled to recovery against the insurer although he was not listed as mortgagee in the policy.
Nevertheless, defendant contends that this amounts to reformation of the policy and that the petition contained no allegations concerning reformation. Plaintiff's petition contains the following language:
"That at the time of the issuance of said policy it was intended by petitioner and Mr. and Mrs. Gilbert E. Martin that said policy would contain the provision *926 that losses under said policy would be payable first to Fidelity Homestead Association as first mortgagee and petitioner, Calvin A. Diaz, Sr., as second mortgagee."
We believe this allegation of fact in a suit for a loss under the policy is sufficient to notify defendant that relief is requested in accordance with the intention of the parties at the inception of the policy. Furthermore, this court can render any judgment which is just, legal, and proper upon the record on appeal. C.C.P. art. 2164.

AMOUNT OF LOSS
The amount claimed in plaintiff's petition was based on an estimate by a contractor whose bid was not accepted. Instead, plaintiff chose to have three of his employees and a painting subcontractor perform the required labor, using materials supplied by plaintiff, and to have a carpeting subcontractor replace the carpets. The trial judge awarded $1,210.15, the cost of the materials and of the painter's labor. However, he disallowed the salaries of plaintiff's employee and the cost of replacing the carpets.
As to the salaries, one employee worked there for two weeks at $112 per week, removing trash and attempting to clean paint from the carpets, floors, walls and concrete. After these attempts the carpets were replaced and the walls repainted, which was originally advised by the estimating contractor. A second employee repaired wall and ceiling sheetrock, cabinets, and ceramic tile, and replaced windows and fixtures. Although he stated that he worked 2½ weeks, he did not indicate his salary. There was testimony that a third employee also worked on the job, but there was no testimony as to what work he performed, how long he worked, or what salary he earned during that period. Under these circumstances we conclude that the trial judge did not commit manifest error in denying the entire claim for employee's labor in the total amount of $806.40 on the basis that he could not distinguish from the evidence the amount required to repair the vandalism damage from the amount of labor expended in cleaning up the deplorable condition left by the Martins. This latter item does not constitute vandalism damage under the policy, especially since there is no indication the Martins damaged the property in contempt against the foreclosing mortgagee.[3]
Inasmuch as the movers testified that the carpets needed replacement before the vandalism occurred, and there was no contradictory evidence, we also find no manifest error in the denial of the cost of replacing the carpets.
Defendant contests the trial judge's award of the cost of painting the walls, which the movers described as marked up and dirty. From the testimony of the workers, we do not believe that the trial judge erred in concluding that the need for repainting was caused by the vandal's smearing paint on the walls, rather than by dirt or children's markings, which can normally be washed.
However, the trial judge in itemizing the damages neglected to deduct $100.00 in accordance with the mandatory deductible provision of the policy. The judgment will be amended to include this deduction.

PENALTIES AND ATTORNEY'S FEES
Defendant at first investigated to determine if the vandalism occurred before *927 March 20, the effective date of the endorsement. Then upon learning that the loss occurred before the endorsement was requested or issued, defendant denied plaintiff's claim on that basis.
An insurance company, which denies a claim under the policy based upon just cause or a good faith defense such as reasonable doubt that the loss was covered by the policy, it is not liable for penalties and attorney's fees because of the denial. Creole Explorations, Inc. v. Underwriters at Lloyd's, 245 La. 927, 161 So.2d 768 (1964). In this case, not only was there the coverage problem, but also there was a dispute over the amount of damage caused by vandalism and the cost of repairing that damage. Under these circumstances we believe that defendant was not arbitrary in denying the claim.[4]

DECREE
The judgment of the trial court is amended to reduce the award by $100.00, the mandatory deductible amount under the insurance policy. As amended, the judgment is affirmed.
Amended and affirmed.
LEMMON, J., dissents in part; see footnote 4.
NOTES
[1] See Lanza Enterprises, Inc. v. Continental Ins. Co., 142 So.2d 580 (La.App. 3rd Cir. 1962).
[2] While this principle was applied in the cases cited in the annotations generally to contests between the mortgagee and the mortgagor or a receiver, the principle is also applicable to a claim against the insurer by the mortgagee whose interest the mortgagor was required to insure, if there are no conflicting claims.
[3] The policy provision that "this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner" does not serve to bring the owner's willful (but non-malicious) neglect to properly care for the property within a vandalism claim under the policy. This is simply not damage caused by vandalism.
[4] Lemmon, J., notes his dissent from the denial of penalties and attorney's fees. Defendant admitted that it denied the claim solely on the basis that plaintiff was not listed as a mortgagee, an omission which defendant should have known under the circumstances was a simple oversight by its agent and/or its insured. If defendant was fearful of an additional claim by Martin (whose whereabouts were unknown after his move) or by Fidelity, it could have impleaded all parties in a concursus proceeding. Instead, defendant chose to attempt to avoid payment of the claim altogether. While there was a legitimate dispute as to the validity or amount of some portions of plaintiff's claim, there was no good faith basis for the denial of the entire claim.