404 So.2d 1275 (1981)
LEON A. MINSKY, INC., Plaintiff-Appellant,
v.
PROVIDENCE FASHIONS, INC., et al, Defendants-Appellees.
No. 14626.
Court of Appeal of Louisiana, Second Circuit.
September 29, 1981.
*1276 Lancaster, Baxter & Seale by Michael E. Lancaster, Tallulah, for plaintiff-appellant.
Captan Jack Wyly, Lake Providence, for defendant-appellee Providence Fashions, Inc.
Lensing, Gravel, Nelson & Rosenzweig by James L. Nelson, Lake Providence, for defendant-appellee, Bank of Dixie.
Hudson, Potts & Bernstein by Fritz B. Ziegler, Monroe, for defendant-appellee-garnishee Royal Globe Ins. Co.
Before PRICE, MARVIN and FRED W. JONES, Jr., JJ.
PRICE, Judge.
This appeal concerns the conflicting claims of mortgage creditors to the proceeds of fire insurance on the mortgaged property. The dispute arises from the following sequence of events.
On May 11, 1976, M & J Fashions, Inc., sold to Providence Fashions, Inc., all of the inventory, merchandise, furniture, equipment, and fixtures located in their Lake Providence store. At the time of sale, M & J Fashions owed $19,000 to plaintiff, Leon A. Minsky, Inc. As part of the sales agreement, Providence Fashions assumed this debt and gave two notes payable to plaintiff in the amount of $4,000 and $15,000, each note being secured by a conventional chattel mortgage on the purchased property. As further security, Providence Fashions obligated itself to obtain a fire insurance policy on the mortgaged property, with a loss payable clause to the holder of the note.
To finance the cash portion of the purchase, Providence Fashions on this same date borrowed $35,058.24 from Bank of Dixie and executed a note secured by conventional chattel mortgage. In connection with the financing arrangements, plaintiff was required to subordinate its two mortgage notes, totaling $19,000, to the bank's mortgage on the property being transferred.
In December 1976 Providence Fashions borrowed an additional $13,391.52 from Bank of Dixie to open another store in Winnsboro. This loan was secured by a conventional chattel mortgage on all the merchandise and fixtures located in Winnsboro store.
On January 22, 1979, Providence Fashions signed a new note to Bank of Dixie in the amount of $58,864.68 which represented its aggregate indebtedness to the bank on this date. This note was secured by what the parties termed a "pledge" of the two previous chattel mortgage notes held by the bank, a pledge of two certificates of deposit, *1277 and the personal guarantee of a third party. At the time, $17,860.90 remained due on the May 1976 note and the entire balance was outstanding on the December 1976 note.
The Winnsboro store was closed and all of the merchandise and fixtures were removed to Lake Providence in January of 1979.
On May 4, 1979, Providence Fashions obtained a $40,000 fire insurance policy on its Lake Providence store. This policy did not designate plaintiff as a loss payee. It did name Bank of Dixie as a loss payee in an endorsement which was erroneously prepared on a printed form intended for use in connection with a public employee blanket coverage policy.
The Lake Providence store was completely destroyed by fire on January 23, 1980. After the fire it was discovered that the wrong endorsement form had been used to designate a loss payee in the fire insurance policy. At the suggestion of the insurance company, the policy was amended by substituting the correct endorsement naming Bank of Dixie as loss payee. The new endorsement was made retroactive to the date of issuance of the policy.
Prior to payment of the insurance proceeds, plaintiff obtained judgment against Providence Fashions for the $12,300 still owing on its $15,000 chattel mortgage note. This judgment also recognized plaintiff's chattel mortgage on certain described fixtures and furnishings which had been destroyed in the fire.
Plaintiff filed a petition for garnishment citing Royal Globe Insurance Company as garnishee and alleging the company was indebted to Providence Fashions under the terms of the fire insurance policy which it had issued. Royal Globe answered the interrogatories propounded by plaintiff, claiming that any indebtedness owed under the policy was due to the named loss payee, Bank of Dixie, whose claims exceed the $40,000 proceeds of the policy. Plaintiff filed a rule to traverse garnishee's answers and joined Bank of Dixie as defendant-in-rule.
On trial of the rule plaintiff contended it was the holder of a vendor's lien and as such entitled to preference over the proceeds of insurance under the provisions of La.R.S. 9:4581.[1] Plaintiff further took the position that the bank was not a bona fide loss payee at the time of the fire as the wrong endorsement form was attached to the policy, therefore, the subsequent amendment of the policy by the insurer had no effect on plaintiff's rights which became vested at the time of the loss. Plaintiff further contended that if the court ordered reformation of the policy to reflect the bank as loss payee, the court should also reform the policy so as to include plaintiff as a named loss payee in the policy. Plaintiff also contended the bank's interest as loss payee was limited to the balance owed on the note secured by the May 1976 mortgage.
After trial of the rule, the district court found that correction of the loss payable clause to name the bank as loss payee was permissible as it conformed to the true intent of the parties; furthermore, plaintiff was not entitled to a vendor's lien on the policy proceeds because there was no showing plaintiff held a valid vendor's lien on the insured property prior to the fire. Judgment was rendering dismissing the garnishment proceeding and ordering payment of the entire insurance proceeds to Bank of Dixie.
We do not find it necessary to resolve the issue of whether plaintiff had a vendor's lien or a preference to the insurance proceeds under La.R.S. 9:4581 since we are of the opinion plaintiff is entitled to the relief sought for the reasons assigned hereafter.
*1278 Considering the particular facts and circumstances of this case, we find plaintiff is entitled to an equitable reformation of the insurance contract so as to share in the policy proceeds as its interest may appear.
We are aware that equitable reformation of any contract is seldom allowed. However, under La.C.C. Articles 21[2] and 1965,[3] this court is charged with the duty of applying equitable principles in all situations where the express law is silent.
The record shows that Providence Fashions agreed in the act of mortgage to provide insurance on the mortgaged property for the benefit of the plaintiff. It is clear plaintiff relied upon this agreement and suffered a loss of security when insurance was obtained without plaintiff being included as a loss payee. The executive vice president of the bank testified that when he made the original loans to Providence Fashions in 1976, he knew plaintiff had a chattel mortgage on the property in question. Since the bank required a subordination of plaintiff's mortgage to the bank's mortgage of the same date, it must be presumed the bank was aware of all of the provisions of plaintiff's mortgage, including the obligation of the mortgagor to protect plaintiff's security with insurance and to designate plaintiff as a loss payee. Additionally, we find it significant that the original reformation of the loss payee endorsement was accomplished at the request of the insurance company, a party with a limited interest in the outcome of this litigation. The mortgagor, Providence Fashions, made no effort to amend the incorrect loss payee endorsement. In fact, there was no valid loss payee designation in effect in the policy on the date of the fire. Therefore, the intent of the mortgagor in designation of loss payees at the time of the procurement of the policy should be determined solely by the obligations previously assumed by him in relation to both plaintiff and the Bank of Dixie. To do otherwise would permit the mortgagor to unilaterally granted an unfair preference to one of his secured creditors. It must be assumed the debtor intended to carry out his legally contracted obligations. Under the circumstances, to prevent an unjust enrichment at the expense of plaintiff, equity dictates that the insurance contract be reformed to list both Bank of Dixie and Leon A. Minsky, Inc., as loss payees as their interest may appear.
In reaching this decision, this court is guided by Diaz v. Cherokee Insurance Co., 275 So.2d 922 (La.App. 4th Cir. 1973); and Taylor v. Audubon Insurance Co., 357 So.2d 912 (La.App. 4th Cir. 1978), writ denied, 359 So.2d 1307 (La.1978).
In Diaz v. Cherokee Insurance Co., supra, the mortgagor obtained a homeowner's policy with the first mortgagee named as loss payee, but failed to list the second mortgagee, whose mortgage was executed simultaneously with the first mortgage. Both acts of mortgage required mortgagor to obtain insurance for the protection of mortgagees. Neither the insured mortgagor nor the named mortgagee made a claim for the loss. The court determined the unnamed second mortgagee had a right to reformation of the policy.
In Taylor v. Audubon Insurance Co., supra, the court held that even though the mortgagors were unnamed in the insurance policy acquired by the mortgagee, the mortgagors had a right to equitable reformation of the policy and were entitled to recover for fire loss. In the court's opinion, reformation was allowable because there was no *1279 indication the insurer would have written the policy in any different way, charged any different premium, insured the structure for any different amount, or imposed any different requirements for coverage if the mortgagors had been included in the policy.
We interpret both cases to stand for the proposition that under the appropriate factual situation, a court has the authority to grant reformation of the loss payable clause of an insurance contract to prevent an unjust enrichment.
Reformation to include both the bank and the plaintiff in the instant situation will not adversely affect Royal Globe's position as insurer. Royal Globe is further protected by the fact they have not yet paid out the policy proceeds, and consequently will not face the prospect of paying twice on the policy. We therefore find the circumstances presented warrant the reformation of the policy to include both mortgagees as loss payees.
Having found plaintiff is entitled to reformation of the insurance policy, we must now decide how the insurance proceeds are to be distributed.
Where insurance is taken out by a mortgagor for the benefit of a mortgagee, the mortgagee is entitled to the proceeds of the policy to the extent of his mortgage debt due at the time of loss. Durbin v. Allstate Insurance Co., 267 So.2d 779 (La. App.2d Cir. 1972). This principle of law also applies to the instant situation where an insurance contract has been reformed for the benefit of a previously unnamed mortgagee.
To determine the amount of mortgage debt owing to each party at the time of the fire, this court is required to evaluate four notes, all allegedly secured by chattel mortgages on property located in the Lake Providence store:
(1) The May 1976 note in favor of Bank of Dixie secured by a conventional chattel mortgage, on which there was a balance due of $17,860.90 at the time of loss.
(2) The May 1976 note in favor of plaintiff, secured by a conventional chattel mortgage that was subordinated to the bank's above described mortgage, on which there was a balance due of $12,300 at the time of loss.
(3) The December 1976 note in favor of Bank of Dixie, secured by a conventional chattel mortgage on property located in the Winnsboro store, on which there was a balance due of $13,391.52.
(4) The January 1979 note in the amount of $58,864.68, executed in favor of Bank of Dixie, allegedly secured by a "pledge" of the May and December 1976 notes.
Bank of Dixie contends the January 1979 note is a mortgage debt by virtue of the "pledge" of the May and December 1976 chattel mortgage notes. We hold this attempted pledge is improper in that it would have the effect of increasing the debt burden upon the earlier mortgages to the prejudice of the mortgage held by plaintiff.
In Thrift Funds Canal, Inc. v. Foy, 261 La. 573, 260 So.2d 628 (1972), the Supreme Court stated:
When partial payment is made of a mortgage installment note for a specific debt, the payment of the installments extinguishes the note pro tanto. At the same time, the payment reduces the debt burden upon the mortgage. Thereafter, the debt burden cannot be increased to the prejudice of junior mortgages.... [Citations omitted.]
In the present case, there is no dispute that the May and December 1976 instruments held by Bank of Dixie were conventional mortgages, given to secure particular existing debts. At the time of issuance of the 1979 note, the May 1976 note had been reduced to $17,860.90 and the entire balance of the December 1976 note was outstanding. According to jurisprudence, the attempted pledge of the earlier notes could not increase the debt burden bearing upon the mortgages securing those notes. In other words, the May 1976 mortgage could only secure a debt of $17,860.90. Likewise, the December 1976 mortgage was limited to securing a debt of $13,391.52.
*1280 Concerning the December 1976 note to the bank, the evidence shows that it was secured by a chattel mortgage on the merchandise and fixtures located in the Winnsboro store. This store was closed and the merchandise and fixtures were removed to the Lake Providence store in January of 1979. Approximately four months later, insurance was obtained on the property situated in the Lake Providence store, including the merchandise and fixtures brought over from Winnsboro. At least some of the merchandise and fixtures from Winnsboro must have been present in the Lake Providence store at the time of the fire. For this reason, the December 1976 note, with an outstanding balance of $13,391.52 is a mortgage debt on the insured property.
Since the insurance proceeds are limited to $40,000 and both parties are entitled to share in the money as their interests appear, the competing mortgages must be ranked to determine each party's respective share. By authentic act, plaintiff subordinated its mortgage to the May 1976 mortgage held by Bank of Dixie. However, Bank of Dixie's December 1976 mortgage was perfected subsequent to plaintiff's mortgage and is therefore inferior to plaintiff's mortgage. Thus, we find Bank of Dixie's May 1976 mortgage primes plaintiff's May 1976 mortgage, which in turn primes the December 1976 mortgage held by Bank of Dixie.
By virtue of its superior mortgage, Bank of Dixie is entitled to the balance owed on its May 11, 1976 note from the policy proceeds. Plaintiff is entitled to next be paid the balance owed on its mortgage note. The remaining policy proceeds accrue to Bank of Dixie because of the second mortgage note which it holds.
For the foregoing reasons the judgment appealed is reversed, and it is ordered that plaintiff's garnishment against Royal Globe Insurance Company be maintained; that the insurance policy of Royal Globe issued to Providence Fashions, Inc., No. PYN427375, in the amount of $40,000 be reformed to include both Bank of Dixie and plaintiff, Leon A. Minsky, Inc., as loss payees as their interests may appear; that the proceeds of the policy be paid to these loss payees in the proportion to the balance owed, together with interest and attorney fees, on their respective chattel mortgage notes which are hereby ranked as follows:
(1) Bank of DixieChattel mortgage note dated May 11, 1976, in the original sum of $35,058.24, with an approximate balance of $17,860.90.
(2) Leon A. Minsky, Inc.Chattel mortgage note dated May 11, 1976, in the original amount of $15,000, with an approximate balance owed of $12,300.
(3) Bank of DixieChattel mortgage note dated December 24, 1976, in the original amount of $13,391.52.
It is further ordered that all costs of these proceedings, including this appeal, be paid equally by plaintiff, Leon A. Minsky, Inc., and defendant-in-rule, Bank of Dixie.
NOTES
[1] § 4581. Holder of vendor's privilege on property destroyed by fire, privilege on insurance.

The holder of a vendor's privilege on movable property which is destroyed by fire has a privilege to the amount of the unpaid portion of the purchase price on the claim or money due the owner or vendee under policies of insurance covering that property. This privilege has the rank of a vendor's privilege on the thing sold and is superior in rank to any privilege growing out of the attachment, garnishment, or seizure of the claim or money.
[2] Art. 21. Absence of express law, court's duty to decide equitably.

In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent.
[3] Art. 1965. Basis of equity.

The equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity.