**AMERICAN GENERAL FIRE & CASUALTY COMPANY,**
Plaintiff–Appellee,

v.

**Mizell REESE and Barbara Reese,**
Defendants–Appellants,

v.

**U.S. DEPARTMENT OF AGRICUL-TURE, Defendant–Appellee.**

No. 88-4155.

United States Court of Appeals,
Fifth Circuit.

Aug. 29, 1988.

Paul Henry Kidd, Jr., Monroe, La., for defendants-appellants.

John A. Broadwell, Asst. U.S. Atty., Joseph S. Cage, Jr., U.S. Atty., Leven H. Harris, Asst. U.S. Atty., Shreveport, La., for defendant-appellee.

Sharon W. Ingram, J. Michael Hart, Monroe, La., for plaintiff-appellee.

Before THORNBERRY, WILLIAMS and SMITH, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellants, Mr. and Mrs. Reese, appeal the district court's order releasing insurance proceeds for their home, which was destroyed by fire in 1986, to the Farmers Home Administration (FmHA). The terms of the mortgages which the Reeses gave FmHA on their home as security for crop production loans required them to insure the home for the benefit of FmHA. But the American General Fire and Casualty Co. insurance policy in effect at the time of the fire did not name FmHA as a loss mortgagee or loss payee. The district court held that under Louisiana law, FmHA held an equitable lien in the securi-

ty property as of the time of the fire, and awarded the insurance proceeds to the FmHA. We AFFIRM the district court's judgment in favor of American General and FmHA, but on different grounds. We also amend the court's judgment to deny the Reeses penalties or damages or attorney's fees under the Louisiana Insurance Code. This matter was not addressed by the district court.

I.

Most of the facts were stipulated by the parties, and the case was decided by the district court on the record, without trial.

Mr. and Mrs. Reese are farmers who in recent years received several crop production loans through the Farmers Home Administration (FmHA), an agency of the federal government. As security for these loans, the Reeses granted various mortgages on their home, which was located on a one-acre lot in Morehouse Parish, Louisiana. The mortgages all contained language requiring that the mortgage security be properly insured for the benefit of the mortgagee, FmHA.[1] By a letter dated March 27, 1985, FmHA wrote appellants directing them "to obtain insurance on dwelling and assign it to FmHA." The Reeses then obtained an $80,000 fire insurance policy on their residence in June, 1985. The policy did not, however, name the FmHA as a loss payee or mortgagee, nor did it otherwise indicate FmHA's interest in the property.

The policy was in full force and effect when the Reeses' home was totally destroyed by fire on April 26, 1986. The Reeses made timely proof of loss to appellee, American General. About July 15, 1986, American General issued a check for the fire loss to the Reeses for $80,000 which was made payable jointly to them *and* to the United States.[2] A few weeks

---

1. The language printed in the standard USDA–FmHA mortgage form states that the borrower "hereby COVENANTS AND AGREES: ... (8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government." The parties stipulated that "[t]he mortgage between the United States and the Reeses contains clauses requiring the mortgage security to be properly insured for the benefit of the mortgagee."

2. The record includes an affidavit dated February 25, 1987, and signed by Charles N. Andrews, American General's claims manager, which states "... that during the course of his investi-

later, the Reeses returned the check to American General and asked that a new one be issued to them only. American General did not issue a new check.

On October 23, 1986, the Reeses sold the one-acre lot upon which their residence had been located. Proceeds of the sale (amounting to $2,000) were paid to FmHA, and four mortgages held by FmHA on the one acre were "cancelled" or "released" the next day. Relevant language in the cancellation form, captioned *"Partial Release,"* reads:

> ... the Government does hereby release from the lien of said mortgage the property hereinafter described to-wit: [legal description of location omitted] but no further, hereby authorizing and requesting the Recorder of mortgages of the Parish of Morehouse, Louisiana, to make mention of the partial release of mortgage herein granted ... on the margin of the record of said mortgage in his office ...
>
> Only the aforedescribed property is released from the lien of said mortgage. This release shall not affect or modify the obligation secured by said mortgage, or affect or release any property described in said mortgage other than that specifically released herein.

American General asked the United States for a release of its claims against the $80,000, but the United States made no response. It does not appear that the United States manifested any interest in the insurance proceeds until February 18, 1987.

On August 20, 1986, the Reeses sued American General in state court for $116,-000 ($80,000 for dwelling loss, $20,000 penalty or damages under Louisiana law, and $16,000 for loss of use of dwelling). On January 20, 1987, American General filed petition for concursus (interpleader) naming as defendant-claimants the Reeses and the United States. American General then deposited the full amount payable under the policy into the state court registry. On January 29, 1987, the Reeses filed a motion for summary judgment asking the state court to award them the insurance policy proceeds from American General together with statutory penalties and attorney's fees under La.R.S. 22:658.[3] On February 18, 1987, the United States removed the case to the federal district court. Following removal, on April 21, 1987, the Reeses filed a supplemental motion for summary judgment with a copy of the cancellation/release of mortgages held by the United States on the one-acre lot. The district court denied the Reeses' motion for summary judgment on June 16, 1987. On August 7, the parties agreed to have the case tried upon stipulations of fact under an October 7, 1987 deadline. The Reeses' unpaid loan balance at that time was in excess of $185,000.

On February 16, 1988, the district court awarded the entire insurance policy proceeds of $80,000 plus accumulated interest to the United States. The court directed the Parish Clerk of Court to disburse all subject funds from the registry to the United States. The district court held that an "equitable lien" existed on the policy proceeds in favor of FmHA by virtue of appellants' agreement to make the policy payable to it, and that this equitable lien was

---

gation following the fire concerning Mr. and Mrs. Reese, he discovered that there was a mortgage on the insured premises to and in favor of the F[m]HA, which said mortgage, among other provisions, contained clauses [*sic*] providing that the insured would keep and maintain the property properly insured."

**3.** The Louisiana Insurance Code provides in relevant part as follows:

**§ 658. Payment of claims, policies other than life and health and accident; penalties;**
...
A. All insurers issuing any type of contract, other than those specified in R.S. 22:656 and R.S. 22:657, shall pay the amount of any claim due any insured ... within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest.
B. (1) Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the total amount of the loss, payable to the insured ... together with all reasonable attorney fees for the prosecution and collection of such loss ...
LA.REV.STAT.ANN. § 22:658 (West 1988).

Text:

not affected by cancellation of all mortgages on the subject lot. The court did not address appellants' motion for penalties and attorney's fees. The Reeses appeal this judgment.[4]

## II.

Three issues are before us. The first is whether the district court properly awarded the insurance proceeds to FmHA under an "equitable lien" or some other legal or equitable theory. The second is whether the district court erred in finding that the government's claim upon the insurance proceeds was unaffected by FmHA's cancellation or "partial release" of the subject property. The final issue involves possible penalties and attorney's fees under Louisiana law.

### A. *Equitable Lien; Equitable Reformation*

On March 27, 1985, FmHA wrote a letter to appellants requiring them "to obtain insurance on dwelling and assign it to FmHA." All of the mortgages between the United States and appellants contained a clause requiring the mortgage security to be properly insured for the benefit of the mortgagee. Nevertheless, FmHA was not listed as mortgagee on appellants' fire insurance policy with American General, the policy was not assigned to FmHA, and there was no loss payee clause in the policy in favor of FmHA when the fire occurred on April 26, 1986.

The district court found that these facts invoked the doctrine of equitable lien under Louisiana law as set out in *Wheeler v. Insurance Company*, 101 U.S. 439, 442, 25 L.Ed. 1055 (1880).

[I]t is settled by many decisions in this country, that if the mortgagor is bound by covenant or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have

an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed. [Citations omitted]. The equitable doctrine upon which the appellants' claim is founded undoubtedly obtains in Louisiana. It is derived from the principles of the civil law, which is the basis of the civil code of that State; and it is supported by the authorities cited from the Louisiana reports. [Citations omitted.]

The district court held that *Wheeler* is still recognized authority in Louisiana courts, citing *Davis v. Aetna Casualty & Surety Company*, 329 So.2d 868, 872 (La.App. 1975), *writ refused*, 333 So.2d 233 (La. 1976).

It is not clear from *Davis*, however, whether *Wheeler* still is the law in Louisiana. The *Davis* court merely stated, "we are cognizant of the equitable lien theory enunciated in *Wheeler*," but then went on to resolve the issue before it (penalties and attorney's fees) on the basis of La.R.S. 22:658. *Id.* No recent cases cited by the district court or by the parties refer to *Wheeler*.[5] Of course, the general law in Louisiana is that where an insurance policy is taken out by a mortgagor for the benefit of a mortgagee, the mortgagee is entitled to the proceeds of the policy to the extent of the mortgage debt due at the time of loss. *Durbin v. Allstate Insurance Co.*, 267 So.2d 779, 781 (La.App.1972); *Adams v. Allen*, 19 So.2d 578, 580 (La.App.1944). Particularly applicable to the case before us are the recent Louisiana cases holding that this principle of law is properly applied where the mortgagee is unnamed in the policy. The legal theory in these cases is that an equitable reformation of the insurance contract for the benefit of a previously unnamed mortgagee is justified in order to prevent unjust enrichment. *Leon A. Minsky, Inc. v. Providence Fashions, Inc.*, 404 So.2d 1275, 1278–79 (La.App.), *writ de-*

---

4. The district court and this Court subsequently denied appellants' motion to stay the judgment releasing the proceeds pending appeal.

5. The only case cited in the briefs and the record in support of the equitable lien theory is *Hartford Fire Insurance Co. v. Landreneau*, 19

La.App. 280, 140 So. 52, 54–55 (1932). *Wheeler* and the equitable lien theory are also mentioned in dicta in *Smith v. United Fire Insurance Co.*, 303 So.2d 286, 289 (La.App.1973), *writ denied*, 303 So.2d 749 (La.1974).

*nied,* 407 So.2d 731 (La.1981); *Taylor v. Audubon Insurance Co.,* 357 So.2d 912, 914–15 (La.App.), *writ denied,* 359 So.2d 1307 (La.1978); *Diaz v. Cherokee Insurance Co.,* 275 So.2d 922, 924–25 (La.App. 1973).

■ Under Louisiana jurisprudence, reformation is an equitable remedy whereby a court may reform a contract so as to reflect the intentions of the parties. An insurance policy may be reformed where, because of error or mistake, the policy does not conform to the original intention of the parties. *Pacific Insurance Co. v. Quarles Drilling Corp.,* 850 F.2d 1087, 1088–89 (5th Cir.1988). Clearly, the Louisiana doctrine of equitable reformation articulated in *Minsky, Taylor,* and *Diaz* is applicable to prevent unjust enrichment in the present case. Appellants had agreed to maintain insurance on their home for the benefit of FmHA as a condition for receiving crop insurance loans worth substantially more than the value of their home. It must be assumed that the debtors intended to carry out their legally contracted obligation. *Minsky,* 404 So.2d at 1278. They cannot now claim the proceeds of that insurance for themselves on the basis of their own failure to name FmHA as mortgagee or loss payee in their policy.

The district court held that the government is entitled to the insurance proceeds on the theory that an equitable lien was created in favor of the FmHA at the time of the fire. The same result would obtain on either the equitable lien or the equitable reformation theory. We are not certain, however, whether the equitable lien doctrine continues to exist in Louisiana, and it is unnecessary to decide that question to resolve this case. Thus we affirm the district court's holding that the government was entitled to the insurance proceeds on the theory of equitable reformation. In Louisiana, an appellate court has authority to render any judgment which is just, legal and proper based on the record on appeal, irrespective of whether the particular legal theory on which it makes the judgment has been advanced before, or considered by, the trial court. LA. CODE CIV.PROC.ANN.

art. 2164 (West 1961); *Givens v. Richland–Morris Agency, Inc.,* 369 So.2d 1184, 1185 (La.App.1979); *McMorris v. Pepperdene,* 292 So.2d 892, 893–94 (La.App.), *writ denied,* 294 So.2d 840 (La.1974); *Diaz,* 275 So.2d at 926.

We therefore reform the insurance contract to name FmHA as the loss payee in accordance with the Reeses' prior obligation under the mortgages it granted in return for the crop production loans. This equitable reformation is effective as of the date the insurance policy was issued, and concurrent with the policy during its term. See *Diaz,* 275 So.2d at 925. Thus FmHA was properly the loss payee under the insurance policy both at the time it was issued, and at the time of the fire.

## B.  *The effect of cancellation/release of the mortgages*

■ Appellants state that in Louisiana, structures of a permanent nature are deemed an integral part of the real estate beneath them, and add, "So too are insurance proceeds arising therefrom." They do not cite authority for the latter proposition, however, and case law in Louisiana clearly is to the contrary. Numerous Louisiana cases hold that a residential property insurance policy is a personal contract, and does not run with the land. See *Eagle Star Insurance Co. v. General Accident, Fire & Life Assurance Corp.,* 315 So.2d 826, 828–29 (La.App.1975). Appellants' argument that the government's cancellation or release of its mortgages on the one-acre lot, at that time with no building on it, somehow also cancelled or released their obligation as to the insurance policy is, therefore, without merit.

■ Moreover, the terms of the cancellation specifically reserved "the obligation secured by" the mortgages and "any property described in" them other than that specifically released. The duty to insure for the benefit of FmHA was undoubtedly an "obligation secured by" the mortgages. The fact that the government permitted the Reeses to sell the one-acre lot on which the destroyed home had been situated and apply the proceeds of that sale

against their continuing indebtedness to FmHA does not mean that the government forgave or cancelled the remainder of that debt. The home and the acre of land were security for the obligation; but the obligation existed apart from and independently of the security. We also reject appellants' contention that the government's acceptance of the $2,000 proceeds from the sale of their one-acre lot and its cancellation or release of the mortgages on that property constituted "accord and satisfaction" absolving them from their obligation to repay the remainder of their debt.[6]

We conclude that the government's cancellation or partial release of the remaining mortgages on appellants' destroyed home and lot had no effect upon their obligation to repay the funds obtained as crop production loans.

## C. Penalties and Interest under Louisiana Law

■ Appellants contend that under LA. REV.STAT.ANN. § 22:658[7] they are entitled to a penalty or damages equal to ten percent of the amount of their claim, along with attorney's fees for the failure of American General to pay them the insurance policy proceeds within 60 days.

In other Louisiana cases in which penalties and attorney's fees have been awarded under § 22:658, the award has been made to the party eventually found entitled to the disputed insurance proceeds. The statutory language itself appears to provide for such penalties and fees only if the party seeking them is entitled to the policy proceeds. The penalty is to be *"in addition to* the amount of the loss," and attorney's fees are "for the prosecution *and collection* of such loss." Section 22:658(B)(1), emphasis added. The Reeses were not entitled to the proceeds of the policy. They obviously have no standing to assert a penalty for non-payment of pro-

ceeds to which they have no claim. We amend the district court's order to state that appellants are not entitled to penalties or attorney's fees under § 22:658.

### III.

We hold that the district court properly awarded the subject insurance proceeds to the United States, but we affirm this result on the Louisiana doctrine of equitable reformation rather than the *Wheeler* equitable lien theory. We conclude that the government's cancellation or "partial release" of the several mortgages it held on the Reeses' one-acre lot did not affect the Reeses' obligation to repay the remaining balance due on their crop production loans. Finally, we hold that the Reeses are not entitled to penalties or attorney's fees under La. R.S. § 22:658, and we amend the district court's order and judgment to state that the Reeses shall take nothing by way of penalties or attorney's fees.

AFFIRMED AS AMENDED.

---

**6.** Appellants presented this argument for the first time on appeal. Ordinarily, courts of appeal will consider an issue that was not first presented to the district court only if the issue is purely legal and if refusal to consider it would result in a miscarriage of justice. *C.F. Dahlberg & Co. v. Chevron U.S.A., Inc.,* 836 F.2d 915, 920

(5th Cir.1988); *In re Goff,* 812 F.2d 931, 933 (5th Cir.1987); *Atlantic Mutual Insurance Co. v. Truck Insurance Exchange,* 797 F.2d 1288, 1293 (5th Cir.1986). These conditions do not obtain in the present case.

**7.** See *supra* note 3.