553 So.2d 1088 (1989)
FARMERS-MERCHANTS BANK & TRUST COMPANY, Plaintiff-Appellant,
v.
EMPLOYERS NATIONAL INSURANCE CORP., et al., Defendants-Appellees.
No. 88-939.
Court of Appeal of Louisiana, Third Circuit.
December 13, 1989.
Writ Denied February 23, 1990.
Gauthier & Cedars, Stanford B. Gauthier, II and Stephen Slator, Breaux Bridge, for plaintiff-appellant.
Samuel Thomas, Tallulah, for defendant-appellant, Jones.
Voorhies & Labbe, (John N. Chappuis) and Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Tim McNamara and Jennifer McDaniel, Lafayette, for defendants-appellees.
Before FORET, DOUCET and LABORDE, JJ.
LABORDE, Judge.
Plaintiff, Farmers-Merchants Bank and Trust Company (Farmers-Merchants) instituted suit against defendants, Employers National Insurance Corporation (Employers), Donald Cravins Insurance Agency, Inc., (Cravins Insurance) and Donald Cravins, individually, for recovery of insurance proceeds from a policy purchased by Kyle Jones covering the premises known as the Gypsy Club. Farmers-Merchants sought court ordered reformation of the insurance policy to identify it as mortgagee as well as conventional interest from the date of loss, penalties and attorney's fees. Kyle Jones intervened naming Employers as a defendant, seeking recovery of any insurance proceeds payable in excess of the amount claimed by Farmers-Merchants.[1] After a trial on the merits, the trial court determined *1089 that reformation of the insurance policy was not warranted and that neither Farmers-Merchants nor Kyle Jones was entitled to recovery. Accordingly, it rendered judgment in favor of defendants and against plaintiff and intervenor. We affirm.
FACTS
The record establishes the correctness of the facts as found by the trial court in its written Reasons for Judgment.
In the fall of 1983, Kyle Jones was interested in buying the Gypsy Club nightclub. He applied for a loan with Farmers-Merchants for the building. Farmers-Merchants refused to lend Jones any money unless he also purchased the property on which the nightclub stood. Jones then arranged to buy the property as well, and re-applied for a loan. Farmers-Merchants declined to finance the purchase of the nightclub and property without a down payment. Finally, the bank agreed to close the loan if Kyle Jones obtained the personal guaranty of his father, Joseph Jones, on his son's indebtedness. At the time, Joseph Jones was a director at Farmers-Merchants. Farmers-Merchants also required that Kyle Jones obtain insurance on the premises naming it as loss payee.
On November 23, 1983, Jones sought insurance coverage with Donald Cravins, of his agency, and it was agreed that coverage would be obtained through one of the companies he represented. Cravins completed the application for Jones, and a policy of insurance was subsequently issued by Employers providing coverage up to $125,000.00 on the building and $60,000.00 on its contents. However, when Jones applied for insurance with Cravins Insurance, he did not reveal Farmers-Merchants' status as mortgagee. Thus, Cravins issued a written binder of insurance which did not list any mortgagee or loss payee on it.
On December 12, 1983, Jones went to Farmers-Merchants to close the loan on the property. Merchants-Farmers refused to furnish the loan because there was no indication that it would be the loss payee in the event of the destruction of the property. Jones testified that he then contacted Cravins Insurance to arrange to have the bank listed as a mortgagee and was told over the telephone that he could simply type in the name of Farmers-Merchants as mortgagee on the binder. This testimony was not, however, believed by the trial court. Jones then returned to the bank with the falsified binder and the bank proceeded with the loan.[2]
On May 4, 1984, the Gypsy Club burned to the ground. The trial court made a finding that sometime prior to that date, Jones conspired with Paul Handy and Felton Johnson to burn down the nightclub. Handy and Felton entered the nightclub after closing hours on the 4th of May, and using charcoal lighter fluid that Jones had left for them, set the building alight. After the fire, Jones contacted Cravins and made a claim for the fire loss. At that time, he indicated that the bank had a mortgage on the property. Upon learning that the case might involve arson, Cravins Insurance refused to make any payments.

REFORMATION OF INSURANCE CONTRACT
On appeal, plaintiff contends that the trial court erred in failing to conclude that, as mortgagee of the owner, it was entitled to recovery under the insurance policy issued by Cravins. In essence, plaintiff seeks judicial reformation of the contract so as to share in the policy proceeds as its interest may appear.
Louisiana courts have recognized that written contracts of insurance can be reformed to conform to the original intention of the parties if there exists either mutual error or fraudulent, negligent, or mistaken conduct on the part of the agent issuing the policy. Leitz v. Wentzell, 461 So.2d 473 (La.App. 5th Cir.1984), writ denied, 462 So.2d 1267 (La.1985), and cases cited therein. Also, in some cases, a mortgagee not included in the loss payable *1090 clause of an insurance policy, has been allowed equitable reformation of the policy. See, e.g., Diaz v. Cherokee Insurance Company, 275 So.2d 922 (La.App. 4th Cir. 1973). The equitable reformation of any insurance policy by judicial fiat requires caution and restraint. In order to determine whether a party not named in the policy is entitled to coverage, the court must examine the record to ascertain the true intention of the parties. Taylor v. Audubon Insurance Co., 357 So.2d 912 (La.App. 4th Cir.), writ denied, 359 So.2d 1307 (La.1978).
In the case, sub judice, the essential factual issue is whether Kyle Jones intended to include mortgagee, Farmers-Merchants, at the inception of the policy. According to the testimony of Donald Cravins at trial, Jones was asked at the time he procured the insurance policy whether the property had a mortgage on it. Jones answered that it did not. In contrast, Jones testified that he advised Cravins Insurance of Farmers-Merchants' interest as mortgagee when he applied for the insurance. The trial court chose not to believe the testimony of Jones on this issue. It further found that Jones, in attempting to close the loan, typed in the name of Farmers-Merchants as mortgagee on the binder without Cravins' knowledge. The trial court determined that Jones was not entitled to recover under the policy because he was part of a conspiracy to burn down the nightclub. It clearly did not believe that Jones intended to protect the mortgagee's interest under the contract. We conclude that the trial court did not abuse its discretion in its factual findings or implicit conclusions. A trial court is afforded wide discretion in its findings, particularly when credibility is involved and this court will not substitute its judgment for that of the trial court in the absence of manifest error. Wallace C. Drennan, Inc. v. Haeuser, 402 So.2d 771 (La.App. 4th Cir.), writ denied, 409 So.2d 675 (La.1981).
Plaintiff cites several cases in support of its position that the insurance contract should be reformed: Diaz v. Cherokee Insurance Company, supra; Leon A. Minsky v. Providence Fashions, Inc., 404 So.2d 1275 (La.App. 2d Cir.), writ denied, 407 So.2d 731 (La.1981); Taylor v. Audubon Insurance Co., supra. We find these cases are distinguishable from the case at bar. In Diaz, the mortgagor obtained a homeowner's policy with the first mortgagee named as loss payee, but failed to list the second mortgagee, whose mortgage was executed at the same time as the first mortgage. In determining that the unnamed second mortgagee had a right to reformation of the policy, the court presumed from the surrounding circumstances that the mortgagor had intended to designate it as a loss payee at the inception of the policy.
Similarly, in Minsky, two mortgagees each claimed rights to the proceeds of an insurance policy. The court assumed that the mortgagor had intended at the time of the procurement of the policy to carry out his legally contracted obligation to designate plaintiff as loss payee. The court explained that to do otherwise would permit the mortgagor to unilaterally grant an unfair preference to one of his secured creditors. Thus, it granted equitable reformation of the insurance contract to prevent an unjust enrichment at the plaintiff's expense.
Taylor is another case inapposite to the case at bar. In Taylor, the purchasers-mortgagors brought suit against the vendor-mortgagee's insurer to collect the proceeds of a fire insurance policy. The vendor-mortgagee had continued the fire policy in her name although the purchasers-mortgagors paid the monthly premiums. The Fourth Circuit agreed with the trial court that "[s]ince 1971, the plaintiffs paid for insurance coverage and simply because the policy was not issued in their name they should not be denied their equitable right of recovery." Id. at 914. The Fourth Circuit allowed the equitable reformation of the insurance policy to reflect the parties' true intention.
Plaintiff also relies on Evans v. First Of Georgia Insurance Company, 479 So.2d 568 (La.App. 1st Cir. 1985) to argue that reformation is appropriate in this case. We *1091 disagree. In Evans, plaintiff, the named insured, sold a triplex under a "wrap-around" mortgage and thereby became a mortgagee. However, he continued to be listed on the insurance policy as owner. After a fire to the building, defendant insurance company denied plaintiff's claim due to misrepresentation at the time the policy was issued. The court stated that "the policy as originally issued insured the owner and a mortgagee. Thus the rearrangement of the positions of the parties is justified in the reformation." Id. at 570. Accordingly, the court relied on anti-technical statute LSA-R.S. 22:692 to reform the insurance policy to show the proper interests of the parties.
After careful review of the cases cited by plaintiff we are not persuaded to grant equitable reformation of the insurance contract under the facts of this case. We cannot assume under the circumstances here presented, that Jones intended to carry out his legally contracted obligation to obtain coverage for Farmers-Merchants at the time he procured the insurance policy. Furthermore, Kyle Jones will not be unjustly enriched by his failure to name Farmers-Merchants as loss payee since he cannot recover under the policy.

NEGLIGENCE
Plaintiff also argues that the trial court erred in failing to find that the omission of it as mortgagee on the policy of insurance resulted from the negligence of Cravins. We disagree.
Our courts have recognized that in certain instances of negligence, mistake, error or fraud on the part of an agent or employee of an insurer, an insurance contract can be reformed to the original intention of parties thereto. Dowden v. Commonwealth Life Ins. Co., 407 So.2d 1355 (La. App. 3d Cir. 1981), and cases cited therein. Cravins testified at trial that he did not authorize and would not have allowed Jones to type in the name of the bank as mortgagee on the insurance binder. The trial court found that Cravins was unaware of the status of the bank as mortgagee prior to the fire. After carefully examining the actions of Cravins we cannot find him guilty of any negligence.
For the foregoing reasons, the decision of the trial court is affirmed. Costs of this appeal are taxed to plaintiff, Farmers-Merchants.
AFFIRMED.
NOTES
[1] We note that Kyle Jones has not filed a brief with this court.
[2] The cash sale, executed on December 8, 1983, shows that the nightclub premises were purchased for $45,000.00. The bank loan was for $60,000.00 by virtue of a collateral mortgage.