**FIRST NATIONAL BANK OF DENHAM SPRINGS, Plaintiff–Appellant,**

v.

**INDEPENDENT FIRE INSURANCE COMPANY, Defendant–Appellee.**

No. 90–3574.

United States Court of Appeals, Fifth Circuit.

June 20, 1991.

---

A.S. Easterly, III, Easterly & Pittman, Denham Springs, La., for plaintiff-appellant.

A. Clay Pierce, Jr., Durent, Pierce & Malone, Baton Rouge, La., for defendant-appellee.

Before RUBIN,* POLITZ, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

We are asked to reform an insurance policy to include a mortgagee of insured property destroyed by fire as a loss-payee. We decline to reform.

## FACTS AND PROCEEDINGS IN THE DISTRICT COURT

First National Bank of Denham Springs (FNB) filed suit in Louisiana state court against Independent Fire Insurance Company (Independent Fire) seeking recovery as mortgagee on a policy of fire insurance issued by Independent Fire, covering the home of Joyce Cook, the mortgagor. Independent Fire removed that suit and a companion suit filed by Cook to federal court, consolidating the two actions. On Cook's claim, a jury denied recovery because of arson and/or material misrepresentation. On FNB's claim, the district court declined to reform the insurance policy to recognize FNB as a loss-payee. This decision was based on stipulated facts.

Cook granted FNB a second mortgage on her home. Capital Union Savings (Capital Union) held the first mortgage on the same property. However, Cook did not request that Independent Fire show FNB as a second mortgagee on her fire insurance policy as required by the FNB.[1] Instead she requested that FNB be listed as a loss-payee on her automobile policy. Although FNB had a policy of requiring borrowers to have it named as loss-payee, and although it never received confirmation from Independent Fire or the agent that it had been so named, it took no steps to see that this had been accomplished.

Later the home was destroyed by fire. Only after the property's destruction did the independent agent authorized to write coverage for Independent Fire issue an endorsement naming FNB as an additional loss-payee. This was apparently done when an FNB officer called after the fire to inquire if it was shown as loss-payee.

### I.

The district court refused to reform the policy because neither FNB nor Cook ever requested that Independent Fire add FNB as an additional loss-payee. FNB contends that this ruling is error. It relies on *American General Fire & Casualty Co. v. Reese,* 853 F.2d 370 (5th Cir.1988) for the proposition that equitable reformation of insurance policies under these circumstances is the rule in Louisiana. In *American General,* we reformed a policy to name a mortgagee who required the mortgage security to be insured for its benefit. Our decision was guided by three cases that articulated Louisiana's doctrine of equitable reformation of insurance contracts for the benefit of a previously unnamed

---

* Judge Rubin concurred in this opinion prior to his death on June 11, 1991.

1. Cook's collateral mortgage securing her note to FNB provided in part, that Cook would keep the property insured and would deliver the policy to FNB.

mortgagee to prevent unjust enrichment. *Leon A. Minsky, Inc. v. Providence Fashions, Inc.,* 404 So.2d 1275, 1278–79 (La.Ct. App.), *writ denied,* 407 So.2d 731 (La.1981); *Taylor v. Audubon Ins. Co.,* 357 So.2d 912, 914–15 (La.Ct.App.), *writ denied,* 359 So.2d 1307 (La.1978); *Diaz v. Cherokee Ins. Co.,* 275 So.2d 922, 924–25 (La.Ct.App.1973).

*Minsky* involved a debt secured by a chattel mortgage that required the debtor to obtain fire insurance listing the creditor, Leon A. Minsky, Inc. as a loss-payee. Later, additional debt, secured by the same movables, was incurred from the Bank of Dixie which required Minsky to subordinate its mortgage to that of the bank. The fire insurance policy was obtained, but Minsky was never designated as a loss-payee. Instead, Bank of Dixie was so named in an invalid endorsement.

The court held that equity dictated that the policy be reformed to list both Bank of Dixie and Minsky as loss-payees, as their interests warranted. The court stated that "it must be assumed that the debtor intended to carry out his legally contracted obligations." *Minsky* at 1278. Additionally, the court determined that reformation would be fair because Bank of Dixie was aware of the debtor's obligation to secure insurance to benefit Minsky. The *Minsky* court reasoned that because *no* valid loss-payee designation was in effect on the date of the loss, the intent of the mortgagor should be determined solely by the obligation previously assumed by the debtor in relation to Minsky and Bank of Dixie. The court explained that to do otherwise would permit the mortgagor to unilaterally grant an unfair preference to one of his secured creditors.

However, in the case *sub judice* the first mortgagee, Capital Union, was properly designated. Without more, we cannot assume that Cook intended to obtain insurance coverage for FNB simply because she was obligated to by the mortgage. *See Farmers–Merchants Bank & Trust Co. v. Employers National Ins. Corp.,* 553 So.2d 1088, 1091 (La.Ct.App.1989), *writ denied,* 559 So.2d 141 (La.1990) (holding that something beyond the mere fact that a mortga-

gor had a legally contracted obligation to list a mortgagee on his insurance policy needed to exist to prove the mortgagor intended to name the mortgagee on the policy).

The *Minsky* court interpreted *Diaz* and *Taylor* "to stand for the proposition that under the appropriate factual situation, a court has the authority to grant reformation of the loss payable clause of an insurance contract to prevent an unjust enrichment." *Minsky,* 404 So.2d at 1278–79.

Here, we do not encounter the same "appropriate factual situation." *Minsky* at 1279. We find several important factual differences relating to the dispositive issue of the mortgagor's and mortgagee's intent. In *Diaz* the mortgagor obtained a homeowner's policy with the first mortgagee named as a loss-payee, but failed to list the second mortgagee. Both mortgages were executed simultaneously. Accordingly, the mortgagor's intent to include both mortgagees on the insurance policy at its inception was clear given the fact that both mortgages were simultaneously executed, both required insurance coverage, and no additional premium would be incurred. In the case before us, as in *Diaz,* both mortgages required insurance coverage, and the parties agree that no additional premium would have been incurred. However, unlike *Diaz,* here the mortgages were not executed simultaneously. Independent Fire had issued a policy to Cook insuring her home against fire and listing Capital Union as mortgagee seven months before the second mortgage in favor of FNB was made. The intent Cook manifested to Independent Fire to include Capital Union cannot be extended to FNB under these facts.

In *Taylor* purchasers-mortgagors brought an action against a vendor-mortgagee's insurer to collect proceeds under a fire policy. The court held that even though the mortgagors were unnamed in the mortgagee's policy, the mortgagors had a right to equitable reformation and were entitled to recover for fire loss. Reformation was allowed because there was no indication the insurer would have written the policy in any different way,

charged any different premium, insured the structure for any different amount, or imposed any different requirements for coverage if the mortgagors had been included in the policy. Additionally, however, unlike the case before us, the facts in *Taylor* indicated a clear intent on the part of the mortgagors and mortgagee to obtain insurance coverage for both parties. This was evidenced by the fact that the unnamed loss-payees, the mortgagors, actually paid a major portion of the insurance premiums, but did so through the named insured.[2]

■ In Louisiana the concept of "equitable reformation" has given mortgagees, omitted from the loss payable clause of a property insurance policy, the right to reformation according them recovery. Instead of mutual error, the elements of such right of equitable reformation include (1) an obligation of the mortgagor-insured under the act of mortgage to obtain insurance coverage for the mortgagee,[3] (2) the absence of prejudice to the insurer with respect to either acceptance of the risk[4] or payment of claims, see *Minsky*, 404 So.2d 1275; *Taylor*, 357 So.2d 912; *Diaz*, 275 So.2d 922; 15 W. McKenzie & H. Johnson, III, *Louisiana Civil Law Treatise, Insurance Law and Practice*, § 5, p. 17 (1986), and (3) an intent on the part of the mortgagor-insured and mortgagee to satisfy an obligation under the act of mortgage to obtain insurance coverage for the mortgagee, *Farmers–Merchants*, 553 So.2d 1088.

■ Conceivably, under the facts in *American General* and the Louisiana cases upon which it relied, all these elements existed. Such is not the case here. It is unclear that Cook ever had any intent to include FNB on the insurance policy. The record indicates that she had ample opportunity to manifest such an intent, but never did. This omission is fatal because

the party seeking reformation bears the burden of proving that the policy fails to reflect the intent of the parties. *See Many v. Hartford Acc. & Indemn. Co.*, 505 So.2d 929 (La.Ct.App.1987); *Earl Williams Const. Co. v. Thornton & Brooks, Inc.*, 501 So.2d 1037 (La.Ct.App.), *writ denied*, 504 So.2d 881 (La.1987).

## II.

On its face the district court's judgment does not reveal a specific finding that the required intent was missing, but it is clear from the judgment that such a finding was inferentially made. The district court took care to note that there was:

No evidence of any kind that any attempt was made prior to the fire to add the bank as an insured on the policy. There is no evidence that the insurer or any of its agents or employees were responsible for not including the bank on the policy prior to the fire.... [T]he evidence is clear that the insurer and its employees and agents had no knowledge whatsoever prior to the fire that the bank was to be added as an insured. Furthermore, there was no request made prior to the fire for the insurer or its agent to include the bank on the policy.

■ This Court may infer that the district court made a finding consistent with its general holdings as long as the inferred finding is supported by the evidence. *Perlman v. Pioneer Ltd. Partnership*, 918 F.2d 1244, 1250 (5th Cir.1990); *Goode v. Herman Miller, Inc.*, 811 F.2d 866, 871 (5th Cir.1987). Accordingly, we conclude the evidence supports the inferred finding regarding intent, and we

AFFIRM.

---

**2.** In his concurrence Judge Lemmon stated that it was clear the parties intended to insure the unnamed payee, as partial owner, because an owner's policy was sought and issued rather than a mortgagee's single interest policy.

In a dissent Judge Schott reasoned that there never was any intention on the insurance company's part to contract with the unnamed parties.

**3.** *See* note 1.

**4.** The joint stipulation of fact between FNB and Independent Fire stated that "[t]here would be no charge or additional premium for adding an additional loss-payee to the homeowners policy."